IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PEOPLE.AI, INC.,<br><br>          Plaintiff<br><br>v.<br><br>CLARI INC.,<br><br>          Defendants. | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

1.      Plaintiff People.ai, Inc. ("People.ai") is a Delaware corporation having offices at 303 Twin Dolphin Drive, 6th Floor, Redwood City, CA 94065.

2.      On information and belief, Defendant Clari Inc. ("Clari") is a Delaware corporation having a principal place of business at 1154 Sonora Court, Sunnyvale, California 94086.  Upon information and belief, Clari has made, sold, offered for sale and used, and continues to make, sell, offer for sale, and use the infringing products as described herein.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1338(a).

4.      This Court has both general and specific personal jurisdiction over Clari.  Clari has purposefully availed itself of the privilege of conducting business activities and has conducted and done business in the State of Delaware.  Clari has availed itself of the rights and benefits of Delaware law and has engaged in systematic and continuous contact with the State of Delaware

including with respect to the development, manufacture, marketing, sale, and use of one or more Accused Products.

5.      This Court has personal jurisdiction over Clari in that, at all times pertinent hereto, Clari is and has been a corporation organized and existing under the laws of the State of Delaware. Upon information and belief, Clari also is committing infringing acts in this District.

6.      Venue is proper under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because Clari resides in this Judicial District.

## THE ASSERTED PATENTS

7.      As alleged herein, Clari – individually and/or jointly with others – has infringed (literally and/or by equivalents), and continues to infringe, People.ai's patent rights by making, using, importing, selling, and/or offering to sell products covered by one or more patent claims – or by performing any method claimed therein – within the United States, and/or by contributing to or inducing such infringement.

8.      People.ai is the owner of all rights, title and interest – including the right to bring a suit for patent infringement – in United States Patent Nos. 10,657,129, titled "Systems and Methods for Matching Electronic Activities to Record Objects of Systems of Record with Node Profiles" ("the '129 patent") (copy attached as Exhibit A, hereto) and 10,872,106 titled "Systems and Methods for Matching Electronic Activities Directly to Record Objects of Systems of Record with Node Profiles" ("the '106 patent") (copy attached as Exhibit B, hereto) (collectively, the "Patents-in-Suit").

9.      People.ai is an industry leader and top supplier of revenue operations and intelligence systems to businesses. People.ai's product offerings enable businesses to improve their business activity data collection and analysis.  The Patents-in-Suit generally relate to methods and

systems for improving the functionality of a customer relationship management ("CRM") software program or systems that maintain, update or analyze CRMs, by capturing, maintaining, and interpreting customer interaction data and other information.  Due to its numerous innovations in business activity data analysis and related areas, People.ai has been awarded more than forty patents from the United States Patent and Trademark Office since it was founded in 2016.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 10,657,129

10.      People.ai repeats and realleges the foregoing paragraphs.

11.      Defendant Clari has directly and/or indirectly infringed one or more claims of the '129 patent, in violation of one or more subsections of 35 U.S.C. §271 – including at least one or more of subsections §271(a), (b), (c), (f) and (g) – by making, using, importing, selling, and/or offering to sell products covered by one or more claims of the '129 patent within the United States, and/or by contributing to or inducing such infringement.

12.      Clari has known of the '129 patent and its infringement at least as early as May 6, 2020 when it received correspondence from People.ai concerning its infringement.  Clari received further correspondence from People.ai concerning its infringement of the '129 patent on or about February 10, 2021.

13.      Clari's direct infringements – and/or the direct infringements of others, for which Clari would be liable as an indirect infringer – satisfy all the limitations of one or more claims of the '129 patent, either literally or by equivalents.  A preliminary, exemplary claim chart comparing the Clari revenue operations platform to exemplary claim 20 of the '129 patent is attached as Exhibit C.

14.      Defendant Clari is liable as a direct infringer because it has made, used, sold, offered to sell, or imported into the U.S., products or services that are within the scope of one or

more claims of the '129 patent and/or Defendant Clari has made, used, sold, offered to sell, or imported into the U.S. products, made by methods claimed in the '129 patent, including at least the Clari revenue operations platform.

15.     Defendant Clari is liable as an indirect infringer for the direct infringement of others that have made, used, sold or offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '129 patent and/or that have made, used, sold, offered to sell, or imported into the U.S., products made by methods claimed in the '129 patent.

16.     On information and belief, defendant Clari has actively induced infringement of the '129 patent, at least by intentionally encouraging the direct infringement of one or more claims of the '129 patent by customers and their employees, partners, and/or others. On information and belief, prior to this action, Clari had knowledge of and intended to cause direct infringement by others and/or Clari willfully blinded itself to the existence of the '129 patent and such infringement.  Clari provides instructions, user manuals, advertising, and/or marketing materials which facilitate, direct, or encourage such infringing use with knowledge thereof.

17.     On information and belief, defendant Clari is also a contributory infringer of one or more claims of the '129 patent, at least because it sells, offers to sell, or imports into the U.S. a product for use in practicing subject matter claimed in the '129 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in such infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

18.     The Clari revenue operations platform includes the specific functionality of Clari's product offerings that is used to perform the limitations of each asserted claim of the '129

patent. The Clari revenue operations platform performs the limitations of each asserted claim through its default functionality as provided by Clari and the Clari revenue operations platform has no substantial non-infringing use. On information and belief, prior to this action Clari had knowledge of the '129 patent and intended to cause direct infringement by others, and/or Clari willfully blinded itself to the existence of the '129 patent and such infringement.

19.     For example, Clari's customers that use the Clari revenue operations platform identified above infringe at least independent claim 20 of the '129 patent, as set forth in Exhibit C.

20.     The non-provisional patent application that led to the '129 patent was filed with the U.S. Patent and Trademark Office on December 31, 2018, and the patent issued on May 19, 2020. The U.S. Patent Office carefully examined the claims that ultimately issued in the '129 patent. Consistent with 35 U.S.C. § 282 and the limitations of the claims of the '129 patent, a person having ordinary skill in the art would understand that each claim of the '129 patent (independent or dependent) relates to a separate invention distinct from other claims.

21.     The U.S. Patent Office considered the claims of the '129 patent against the background of prior technology to determine if the claims of the '129 patent identified a patentable advance over prior art systems before issuing the patent. The face of the '129 patent identifies numerous items of prior art from the classifications and many other items of prior art considered in allowing the various claims of the '129 patent.

22.     The claims of the '129 patent, when viewed as a whole, represent specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention.

23.     The inventions claimed in the '129 patent are thus not generically directed to collecting, analyzing and manipulating data, but rather the claims would be understood by a person

of ordinary skill in the art to recite concrete advancements in the technology pertaining to a specific method, apparatus and system.  The invention thus also cannot be performed by the human mind.

24.     That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is demonstrated, for example, by praise People.ai received for its invention.  For example, People.ai has been described as "employ[ing] the industry's most sophisticated matching algorithms to ensure that information from sales and marketing activities end up with the right accounts and opportunities in the CRM," and for "leverag[ing] AI to detect competitor mentions, analyze sentiment, and enrich contact data, helping you identify the best actions to take."  *See* https://crm.org/news/peopleai-where-humans-and-machines-make-crm-better.  People.ai has also been recognized for its "exceptional innovation within the information technology industry" based on the ability of its platform to "help enterprises accelerate time to revenue by automating manual processes and delivering critical intelligence across sales, marketing, customer success, and other go-to-market teams to make them smarter and more efficient."  *See* https://contentenginellc.com/2019/09/26/peopleai-recognized-by-451-research-as-a-451-firestarter/.  Such recognition supports the conclusion that People.ai's patented technology is not merely based on the generic collection and storing of data, but rather it embodies specific innovations in the area of business intelligence that represent technological improvements to conventional systems and methods.

25.     That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is also demonstrated,

for example, by copying of the invention by others in the industry.

26. That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention, is also demonstrated, for example, by People.ai's commercial success with its products that embody certain claims of the '129 patent.

27. A person of ordinary skill in the art would understand that the claims of the '129 patent did not pre-empt any field and are not merely directed to methods or systems for recognizing and storing data, but are specific improvements in technology that improve computer functionality.

28. The '129 patent explains that "it may be challenging to accurately and efficiently populate fields in a node profile due to large number of member nodes." Ex. A at 2:4-6. The '129 patent further explains that when systems are self-populated, there is potential for error or undesired data values due to inherent human bias. *Id.* at 2:6-9. The '129 patent further explains that such errors can cascade, causing "downstream components or functions that perform processing using the node profiles to malfunction or generate faulty outputs." *Id.* at 2:9-12.

29. The claims of the '129 patent address the challenges faced by enterprises with their systems of record by providing systems and methods for linking a company's electronic activities such as emails or calendar information to "node profiles" using information obtained from such electronic activities. Such node profiles are determined dynamically by a "node graph generation system" based on information from the company's records and other information such as the role, the title or the department of an individual who is identified in an electronic activity. *Id.* at 25:44-26:23. For example, the node graph generation system may be updated daily, weekly,

or monthly.  *Id.*

30.      Therefore, the claims of the '129 patent, when viewed as a whole, including as an ordered combination, address difficult technical challenges in the field of business analytics, and they embody specific improvements to the systems of record of an enterprise, such as a customer relationship management system or to systems that maintain, update or analyze CRMs.  The claims of the '129 patent were also not well known, routine, or conventional at the time of the invention, and they represent specific improvements over the prior art and prior existing systems and methods.

31.      As would be appreciated by a person having ordinary skill in the art, the separate claims of the '129 patent also pertain to parsing node profiles based on numerous constantly changing variables.  Therefore, a person having ordinary skill in the art would recognize that the inventions claimed in the '129 patent are not generically directed to collecting and categorizing data.  Rather the claims of the '129 patent would be understood by a person having ordinary skill in the art to recite concrete technological advancements pertaining to a specific system for storing an association between an electronic activity and node profiles, and using node profiles to match electronic activities to record objects in a specific manner, including using information derived from the electronic activity.

32.      In addition, prior to the '129 patent, systems of record such as customer relationship management systems or systems that maintain, update or analyze CRMs did not allow for the association between record objects and node profiles, and they did not allow for the real-time prediction of information associated with electronic activities based on data stored within the customer relationship management system.  Therefore, a person having ordinary skill in the art would understand that the '129 patent and its claims represent concrete and technological

- 8 -

improvements to business intelligence systems by allowing for the generation of dynamic associations between electronic activities and record objects using node profiles. These concrete improvements include the determination of accurate predictions, and the presentation of such predictions to business decision makers, making it possible for the enterprise to obtain benefits from the data within its systems of record that were not possible using conventional systems.

33.     A person having ordinary skill in the art would understand that the separate claims in the '129 patent also did not pre-empt any field, but are highly specific and technical improvements to a system of record such as a customer relationship management system or to systems that maintain, update or analyze CRMs.  A person having ordinary skill in the art would also recognize that the claims of the '129 patent also do not relate to implementation of a business method on a general purpose computer, but are improvements to systems of record based on the matching of electronic activities to record objects.

34.     The claims of the '129 patent are also directed to specific improvements in computer functionality.  Among other things, the claimed inventions improve functionality of systems of record such as customer relationship management systems or to systems that maintain, update or analyze CRMs by determining real time relationships between electronic activities and record objects and dynamically providing node profile information and other information from electronic activities.  The claimed inventions provide a device which continuously and consistently provides insights regarding business operations and can make real-time updates to record objects and assist how business performance targets can be achieved.  The claimed inventions also provide a device that can intelligently infer relationships within sets of data, thus improving efficiency.

35.     These noted improvements over the prior art represent meaningful limitations and/or inventive concepts based upon the state of the art at the time of invention of the '129 patent.

Further, including in view of these specific improvements, the inventions claimed in the '129 patent, when viewed as a whole, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, or typical, including because until the inventions of the claims of the '129 patent, such improvements to systems of record such as customer relationship management systems did not exist in the field.

36.     The inventions claimed in the '129 patent are necessarily rooted in computer technology, and they comprise technological improvements over prior technologies in order to provide new functionality and overcome inefficiencies, including those noted above.  The claimed solutions amount to an inventive concept for the particular problems and inefficiencies noted above.

37.     People.ai has sustained damages as a result of Clari's direct and/or indirect infringement of the '129 patent identified herein and Clari is liable for such damages in this action, including pre-suit damages.

38.     People.ai has no adequate remedy at law for Clari's continued infringement of the '129 patent such that the Court must enjoin Clari from further acts of infringement.

39.     On information and belief, Clari's direct and/or indirect infringement of the '129 patent is and has been willful and deliberate, justifying increased damages under 35 U.S.C. § 284. As stated above, Clari knew of the '129 patent and its infringement before this suit was filed, Clari has continued to infringe the '129 patent after such knowledge, and Clari knew or should have known that its conduct infringed the '129 patent.

40.     In addition, Clari's conduct in infringing the '129 patent is exceptional and entitles People.ai to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 10,872,106

41.     People.ai repeats and realleges the foregoing paragraphs.

42.     Defendant Clari has directly and/or indirectly infringed one or more claims of the '106 patent, in violation of one or more subsections of 35 U.S.C. §271 – including at least one or more of subsections §271(a), (b), (c), (f) and (g) – by making, using, importing, selling, and/or offering to sell products covered by one or more claims of the '106 patent within the United States, and/or by contributing to or inducing such infringement.

43.     The '106 patent issued on December 22, 2020, and Clari has known of the '106 patent at least as of the filing of this Complaint.

44.     Clari's direct infringements – and/or the direct infringements of others, for which Clari would be liable as an indirect infringer – satisfy all the limitations of one or more claims of the '106 patent, either literally or by equivalents.  A preliminary, exemplary claim chart comparing the Clari revenue operations platform to exemplary claim 19 of the '106 patent is attached as Exhibit D.

45.     Defendant Clari is liable as a direct infringer because it has made, used, sold, offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '106 patent and/or Defendant Clari has made, used, sold, offered to sell, or imported into the U.S. products, made by methods claimed in the '106 patent, including at least the Clari revenue operations platform.

46.     Defendant Clari is liable as an indirect infringer for the direct infringement of others that have made, used, sold or offered to sell, or imported into the U.S., products or services that are within the scope of one or more claims of the '106 patent and/or that have made, used, sold, offered to sell, or imported into the U.S., products made by methods claimed in the '106

patent.

47.     On information and belief, defendant Clari has actively induced infringement of the '106 patent, at least by intentionally encouraging the direct infringement of one or more claims of the '106 patent by customers and their employees, partners, and/or others. On information and belief, prior to this action, Clari had knowledge of and intended to cause direct infringement by others and/or Clari willfully blinded itself to the existence of the '106 patent and such infringement.  Clari provides instructions, user manuals, advertising, and/or marketing materials which facilitate, direct, or encourage such infringing use with knowledge thereof.

48.     On information and belief, defendant Clari is also a contributory infringer of one or more claims of the '106 patent, at least because it sells, offers to sell, or imports into the U.S. a product for use in practicing subject matter claimed in the '106 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in such infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

49.     The Clari revenue operations platform includes the specific functionality of Clari's product offerings that is used to perform the limitations of each asserted claim of the '106 patent.  The Clari revenue operations platform performs the limitations of each asserted claim through its default functionality as provided by Clari and the Clari revenue operations platform has no substantial non-infringing use.  On information and belief, prior to this action Clari had knowledge of the '106 patent and intended to cause direct infringement by others, and/or Clari willfully blinded itself to the existence of the '106 patent and such infringement.  If Clari did not have knowledge of the '106 patent prior to the filing of this Complaint, the Clari has knowledge as of the Complaint's filing.

50.     For example, Clari's customers that use the Clari revenue operations platform identified above infringe at least independent claim 19 of the '106 patent, as set forth in Exhibit D.

51.     The non-provisional patent application that led to the '106 patent was filed with the U.S. Patent and Trademark Office on May 18, 2020, and the patent issued on December 22, 2020.  The U.S. Patent Office carefully examined the claims that ultimately issued in the '106 patent.  Consistent with 35 U.S.C. § 282 and the limitations of the claims of the '106 patent, a person having ordinary skill in the art would understand that each claim of the '106 patent (independent or dependent) relates to a separate invention distinct from other claims.

52.     The U.S. Patent Office considered the claims of the '106 patent against the background of prior technology to determine if the claims of the '106 patent identified a patentable advance over prior art systems before issuing the patent. The face of the '106 patent identifies numerous items of prior art from the classifications and many other items of prior art considered in allowing the various claims of the '106 patent.

53.     The claims of the '106 patent, when viewed as a whole, represent specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well known, routine, or conventional at the time of the invention.

54.     The inventions claimed in the '106 patent are thus not generically directed to collecting, analyzing and manipulating data, but rather the claims would be understood by a person of ordinary skill in the art to recite concrete advancements in the technology pertaining to a specific method, apparatus and system.  The invention thus also cannot be performed by the human mind.

55.     That the above features, when viewed as a whole, were specific improvements over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and

were not well known, routine, or conventional at the time of the invention, is demonstrated, for

example, by praise People.ai received for its inventions, as noted above.

56.     That the above features, when viewed as a whole, were specific improvements

over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and

were not well known, routine, or conventional at the time of the invention, is also demonstrated,

for example, by copying of the invention by others in the industry.

57.     That the above features, when viewed as a whole, were specific improvements

over the prior art and prior existing methods, systems, apparatuses and articles of manufacture, and

were not well known, routine, or conventional at the time of the invention, is also demonstrated,

for example, by People.ai's commercial success with its products that embody certain claims of the

'106 patent.

58.     A person of ordinary skill in the art would understand that the claims of the '106

patent did not pre-empt any field and are not merely directed to methods or systems for

recognizing and storing data, but are specific improvements in technology that improve computer

functionality.

59.     The '106 patent explains that "Enterprises and other companies spend significant

amount of resources to maintain and update one or more systems of records," for example

customer relationship management (CRM) systems, enterprise resource planning (ERP) systems,

document management systems, applicant tracking systems, and other systems.  Ex. B at 64:9-15.

The '106 patent further explains that such systems are typically updated manually and in a manner

that does not reflect all of the data available to the enterprise, or "the information that is updated

into the systems of records can be incorrect due to human error, or in some cases, malicious

intent."  *Id*. at 64:17-19.  The '106 patent further explains that such information may otherwise be

outdated, incorrect or incomplete.  *Id*. at 64:22-24.

60.     The claims of the '106 patent address specific challenges faced by enterprises with their systems of record by providing systems and methods for automatically and dynamically matching electronic activities such as emails or calendar events directly to record objects of an enterprise's systems of records.  The '106 patent explains that "as electronic activities are exchanged between users, these electronic activities can be parsed to not only update a node graph [], but further update shadow record objects for one or more systems of records of enterprises that have provided access to such systems of record" to a data processing system.  *Id*. at 64:34-40.  The '106 patent also provides that "the electronic activities can be used to directly update the one or more systems of records of the enterprises without first updating a shadow record object."  *Id*. at 64:44-46.  Finally, the '106 patent provides that "the linked electronic activities can be stored in association with one or more record objects to which the electronic activity is linked in a system of record" because "linking the electronic activities to the record objects can provide context to the electronic activities."  *Id*. at 64:62-67.  Such context may be "direct" context, including for example what happened in the electronic activity or record object, who was involved in the electronic activity or record object, or identifying the contact, node, person, or business process to which the electronic activity or record object should be assigned.  *Id*. at 65:1-6.  Such context also may be "indirect," such as why the electronic activity occurred.  *Id*. at 65:7-9.

61.     The various claims of the '106 patent are directed to specific policy-based approaches to storing such associations between a record object and an electronic activity that include, for example, determining a data source provider associated with an electronic activity, identifying a system of record corresponding to the data source provider, and identifying the sender and recipients of an electronic activity.  The claims further recite determining that an

electronic activity is to be matched to a first set of record objects based on a matching policy that includes identifying the sender and one or more recipients of the electronic activity. By applying the claimed filtering policy, the claims of the '106 patent are able to instantly and intelligently associate candidate record objects with electronic activities.

62. Therefore, the claims of the '106 patent, when viewed as a whole, including as an ordered combination, address difficult technical challenges in the field of business analytics, and they embody specific improvements to the systems of record of an enterprise, such as a customer relationship management system or to systems that maintain, update or analyze CRMs. The claims of the '106 patent were also not well known, routine, or conventional at the time of the invention, and they represent specific improvements over the prior art and prior existing systems and methods.

63. As would be appreciated by a person having ordinary skill in the art, the separate claims of the '106 patent also pertain to storing an association between a candidate record object and an electronic activity based on a policy that considers the specific contents of the electronic activity and the candidate record object. Therefore, a person having ordinary skill in the art would recognize that the inventions claimed in the '106 patent are not generically directed to collecting data and making a calculation. Rather the claims of the '106 patent would be understood by a person having ordinary skill in the art to recite concrete technological advancements pertaining to a system for storing an association between a candidate record object and an electronic activity in a specific manner that includes a matching policy, such that the data from the record object and the electronic activity matched to the record object are both accessible to the system.

64. In addition, prior to the '106 patent, systems of record such as customer relationship management systems did not allow for such context-aware association between record

objects and electronic activities, and they did not allow for the intelligent and instantaneous matching of record objects and electronic activities in the manner that is claimed. Therefore, a person having ordinary skill in the art would understand that the '106 patent and its claims represent concrete and technological improvements to business intelligence systems by allowing for the generating of dynamic associations between record objects and electronic activities. These concrete improvements include the generation of associations based on the recited policy, and the generation of associations based on direct and indirect context, making it possible for the enterprise to make valuable connections between electronic activities and record objects that could not be made in the prior art.

65.     A person having ordinary skill in the art would understand that the separate claims in the '106 patent also did not pre-empt any field, but are highly specific and technical improvements to a system of record such as a customer relationship management system. A person having ordinary skill in the art would also recognize that the claims of the '106 patent do not relate to implementation of a business method on a general purpose computer, but are improvements to systems of record based on specific approaches for matching of electronic activities to record objects.

66.     The claims of the '106 patent are also directed to specific improvements in computer functionality. Among other things, the claimed inventions improve functionality of systems of record such as customer relationship management systems or to systems that maintain, update or analyze CRMs by determining real time relationships between electronic activities and record objects and dynamically providing connections between electronic activities and record objects based on direct and indirect context. Thus, the claimed inventions provide a system that can intelligently infer relationships within sets of data, thus improving efficiency. The claimed

inventions also improve computer efficiency and reduce resource consumption, for example by allowing multiple updates to a CRM dynamically without the need to run multiple individual searches across databases.

67.     These noted improvements over the prior art represent meaningful limitations and/or inventive concepts based upon the state of the art at the time of invention of the '106 patent. Further, including in view of these specific improvements, the inventions claimed in the '106 patent, when viewed as a whole, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, or typical, including because until the inventions of the claims of the '106 patent, such improvements to systems of record such as customer relationship management systems did not exist in the field.

68.     The inventions claimed in the '106 patent are necessarily rooted in computer technology, and they comprise technological improvements over prior technologies to provide new functionality and overcome inefficiencies, including those noted above.  The claimed solutions amount to an inventive concept for the particular problems and inefficiencies noted above.

69.     People.ai has sustained damages as a result of Clari's direct and/or indirect infringement of the '106 patent identified herein and Clari is liable for such damages in this action.

70.     People.ai has no adequate remedy at law for Clari's continued infringement of the '106 patent such that the Court must enjoin Clari from further acts of infringement.

71.     On information and belief, Clari's direct and/or indirect infringement of the '106 patent is and has been willful and deliberate, justifying increased damages under 35 U.S.C. § 284.

72.     In addition, Clari's conduct in infringing the '106 patent is exceptional and entitles People.ai to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, People.ai requests that this Court enter judgment as follows ordering:

(a)     That Defendant infringes the Patents-in-Suit by making, using, offering for sale, selling and/or offering to sell products covered by the claims of the Patents-in-Suit within the United States, and/or by contributing to and/or inducing such infringement;

(b)     That Defendant's infringement of the Patents-in-Suit is and has been willful;

(c)     That Defendant and its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for any of them or on their behalf, or acting in concert with them, be preliminarily and permanently enjoined from further infringement of Plaintiff's patent rights;

(d)     That Defendant be ordered to account for and pay to Plaintiff damages adequate to compensate for their infringement of the Patents-in-Suit, including lost profits and/or reasonable royalty, with prejudgment interest;

(d)     That a post-judgment equitable accounting of damages be ordered for the period of infringement of the Patents-in-Suit following the period of damages established by Plaintiff at trial;

(f)     That damages be trebled for the willful, deliberate, and intentional infringement by Defendant as alleged herein in accordance with 35 U.S.C. § 284;

(g)     That this case be adjudged an exceptional case under 35 U.S.C. § 285 and that Plaintiff be awarded its costs, expenses, and disbursements incurred in this action, including reasonable attorneys' fees as available by law to be paid by Defendant; and

(h)     That Plaintiff will be awarded such other relief as the Court deems just and proper.

## **JURY DEMAND**

People.ai demands a trial by jury on all issues so triable.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

 /s/ Adam W. Poff
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com

Of Counsel:

Jeffrey N. Costakos
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Phone: 414-297-5782
Fax: 414-297-4900
jcostakos@foley.com

Lucas I. Silva
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
Phone: (617) 342-4000
Fax: (617) 342-4001
lsilva@foley.com

*Attorneys for Plaintiff People.ai, Inc.*

DATED:  March 15, 2021