1
2
3
4
5
6

DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
EUGENE NOVIKOV (SBN 257849)
enovikov@durietangri.com
RAGHAV KRISHNAPRIYAN (SBN 273411)
rkrishnapriyan@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:     415-362-6666
Facsimile:      415-236-6300

7
8
9
10

DURIE TANGRI LLP
ANDREW T. JONES (SBN 313619)
ajones@durietangri.com
953 East 3rd Street
Los Angeles, CA 90013
Telephone:     213-992-4499
Facsimile:      415-236-6300

11

Attorneys for Defendant CLARI, INC.

12
13
14

15    IN THE UNITED STATES DISTRICT COURT

16    FOR THE NORTHERN DISTRICT OF CALIFORNIA

17    SAN FRANCISCO DIVISION

18

| PEOPLE.AI, INC., | Case No. 3:21-CV-6314-WHA |
|---|---|
| Plaintiff, | **DEFENDANT CLARI, INC.'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)** |
| v. | |
| CLARI, INC., | |
| Defendant. | Date:    November 18, 2021<br>Time:    8:00 AM<br>Ctrm:    12<br>Judge:   Honorable William Alsup |

19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................................1

II.   NATURE AND STAGE OF PROCEEDINGS ....................................................................1

III.  SUMMARY OF ARGUMENT ............................................................................................1

IV.  STATEMENT OF FACTS ...................................................................................................2

     A.     The Parties ...............................................................................................................2

     B.     The Patents-in-Suit and People.ai's Infringement Allegations...............................3

V.    LEGAL STANDARDS ........................................................................................................7

     A.     The Rule 12(c) Standard .........................................................................................7

     B.     The *Alice* Two-Step Test .......................................................................................7

VI.  THE CLAIMS ARE PATENT-INELIGIBLE......................................................................8

     A.     *Alice* step one: The claims are directed to an abstract idea..................................8

          1.     The Sorting Patents are directed to an abstract idea. ................................8

          2.     The Score Patents are directed to an abstract idea. ................................15

     B.     *Alice* step two: The claims do not contain a transformative inventive concept.................17

VII. CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  890 F.3d 1354 (Fed. Cir. 2018)..................................................................................17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*
  573 U.S. 208, 227 (2014)....................................................................................*passim*

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)..................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................7

*Berkheimer v. HP Inc.*,
  890 F.3d 1369 (Fed. Cir. 2018)................................................................................12

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) ...................................................................................7

*Citrix Sys., Inc. v. Avi Networks, Inc.*,
  363 F. Supp. 3d 511 (D. Del. 2019)..........................................................................19

*Clarilogic, Inc. v. FormFree Holdings Corp.*,
  681 F. App'x. 950 (Fed. Cir. 2017) ..........................................................................16

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*
  776 F.3d 1343 (Fed. Cir. 2014)..................................................................................9

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020)................................................................................10

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)................................................................................17

*Data Engine Tech. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018)....................................................................................7

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x. 529 (Fed. Cir. 2020) ..........................................................................16

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)....................................................................2, 7, 17, 19

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016)..........................................................................12, 18

ii

*Fitbit Inc. v. AliphCom*,
    Case No. 16-cv-00118-BLF, 2017 WL 819235 (N.D. Cal. Mar. 2, 2017) ..........................................16

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ..........................................................................................18, 20

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ......................................................................................................8

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) ....................................................................................................17

*Mortgage Application Techs., LLC v. MeridianLink, Inc.*,
    839 F. App'x 520 (Fed. Cir. 2021) ............................................................................................8, 12

*Papst Licensing GmbH & Co. KG v. Xilinx Inc.*,
    193 F. Supp. 3d 1069 (N.D. Cal. 2016) ........................................................................................16

*Proctor & Gamble Co. v. QuantifiCare Inc.*,
    288 F. Supp. 3d 1002 (N.D. Cal. 2018) ........................................................................................17

*Return Mail, Inc. v. United States Postal Serv.*,
    868 F.3d 1350 (Fed. Cir. 2017) .............................................................................................8, 9, 18

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ..........................................................................................................6

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ....................................................................................................11

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ......................................................................................................11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ..............................................................................................10, 17

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) ....................................................................................................11

*Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*,
    635 F. App'x 914 (Fed. Cir. 2015) ...............................................................................................19

## I.     INTRODUCTION

The Court should enter judgment in favor of Defendant Clari, Inc. ("Clari") because the claims of the Patents-in-Suit are not patent-eligible.  The patents asserted against Clari are directed to the abstract idea of receiving a communication, parsing the communication to determine its author or recipient, and, based on that information, either sorting the communication or calculating the likelihood of successfully closing a sale.  The claims recite nothing that humans have not done for millennia with paper and pen (or even stylus and clay).  Where the claims include the calculation of a score or the making of a prediction, they simply instruct the skilled artisan to perform the calculation using generic technology, rather than providing a novel technological means of doing so.  The Patents-in-Suit themselves acknowledge as much, explaining that their purpose is merely to automate these information processing tasks—not to teach *how* the tasks are to be performed automatically, but simply that they ought to be, using whatever generic computer components the skilled artisan deems appropriate.  But the simple automation of a long-standing abstract idea is not a patent-eligible invention under 35 U.S.C. § 101.

## II.    NATURE AND STAGE OF PROCEEDINGS

People.ai, Inc. ("People.ai") filed this action against Clari on March 15, 2021, alleging infringement of seven patents directed to methods of tracking sales: (1) U.S. Patent No. **10,872,106** (ECF No. 1-2) (the "'106 Patent"); and (2) U.S. Patent No. **10,657,129** (ECF No. 1-1) (the "'129 Patent").  On May 10, 2021, People.ai amended its complaint to add five additional asserted patents: (1) U.S. Patent No. **10,565,229** (ECF No. 21-3) (the "'229 Patent"); (2) U.S. Patent No. **10,496,634** (ECF No. 21-4) (the "'634 Patent"); (3) U.S. Patent No. **10,657,132** (ECF No. 21-5) (the "'132 Patent"); (4) U.S. Patent No. **10,503,783** (ECF No. 21-6) (the "'783 Patent"); and (5) U.S. Patent No. **10,922,345** (ECF No. 21-7) (the "'345 Patent") (collectively, together with the '106 and '129 Patents, the "Patents-in-Suit").  Clari answered this First Amended Complaint, asserting affirmative defenses and a declaratory judgment counterclaim of invalidity under 35 U.S.C. § 101.  ECF No. 30.  With the present motion, Clari moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## III.   SUMMARY OF ARGUMENT

The claims of the Patents-in-Suit are unpatentable under § 101 because they are directed to the abstract ideas of receiving messages, parsing them to determine the sender or recipient, and either sorting

1  them based on this information or determining a likelihood of some future event (without specifying how

2  that likelihood is determined).  The Federal Circuit has repeatedly invalidated similar claims, explaining

3  that high-level, functional claims to "a process of gathering and analyzing information of a specified

4  content, then displaying the results" are not patent-eligible absent a concrete technological improvement—

5  an "assertedly inventive technology for performing those functions."  *See e.g., Elec. Power Grp., LLC v.*

6  *Alstom S.A.,* 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("we have recognized that merely presenting the results

7  of abstract processes of collecting and analyzing information, without more (such as identifying a particular

8  tool for presentation), is abstract as an ancillary part of such collection and analysis.")

9    The Patents-in-Suit claim no technology to implement the information-gathering and analysis

10  functions that they contemplate.  They just say to perform those functions using generic hardware.  The

11  specification confirms this, explaining that the claimed invention "can be realized in a variety of apparatus

12  including electronic devices implemented using any combination of circuitry and software."  '129 Patent

13  at 194:41–43.  Because the claims amount to nothing more than taking a long-standing abstract idea and

14  instructing a practitioner to "do it on a computer," the Patents-in-Suit are invalid under *Alice Corp. Pty.*

15  *Ltd. v. CLS Bank Int'l* and its progeny.  573 U.S. 208, 227 (2014).

16  **IV.    STATEMENT OF FACTS**

17    **A.    The Parties**

18    According to the Complaint, People.ai offers software to help businesses "improve their business

19  activity data collection and analysis" by "capturing, maintaining, and interpreting customer interaction data

20  and other information" and using that data and information to "maintain, update or analyze" the businesses'

21  customer relationship management ("CRM") software, such as Salesforce.  ECF No. 21 ¶ 9.

22    Clari offers its customers a full-service revenue operations platform, with software that performs

23  detailed analysis of sales and revenue activity to enable accurate forecasting, revenue management, and

24  deep insight into sales operations companywide.  Clari uses company employees' email and calendar data

25  to provide visualizations of activity (such as emails and meetings) related to particular "deals" entered in

26  the company's CRM software, and to provide certain other analytics such as a "CRM score" that attempts

27  to indicate the likelihood that a particular deal will close relative to other deals.  It is this aspect of Clari's

28  platform that People.ai has accused of infringement.

DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS / CASE NO. 3:21-CV-
6314-WHA

**B.      The Patents-in-Suit and People.ai's Infringement Allegations**

Each of the seven Patents-in-Suit claim priority to a set of three provisional applications filed over a five month period in 2018.  They share similar titles and are directed to substantially the same concept: "automatically match[ing], link[ing], or otherwise associat[ing] electronic activities with one or more record objects," and, in some cases, using the association between electronic activities and record objects to generate certain "scores" indicating the likelihood of given events.  *See* ECF No. 21, Exs. A-G at Abstract.  As the shared specification confirms, the concept of associating "electronic communications" with a "system of record" is not new: associating the contents of electronic communications with records being managed or maintained by an organization was in the prior art.  '129 Patent at 1:18–37.  And the problem purportedly addressed by the claimed invention is simply that "***manually*** entering data" to achieve this "can be challenging, time consuming, and error prone" given the "large volume of heterogeneous electronic communications transmitted between devices."  *Id.* at 1:33–37 (emphasis added).  Certain of the patents claim to solve this problem by "automatically updat[ing]" what the patent calls "node profiles" "as electronic activities are ingested and processed by the system without requiring any human activity."  *Id.* at 162:21–23.  Yet the claims fail to teach any technological means of accomplishing this automation, instead simply describing the use of "one or more processors" to match "electronic activities" with "node profiles" and "record objects of one or more systems of record."  *Id.* at Claim 1.  In the charts accompanying its complaint, People.ai asserts that a "node profile" is simply a data structure that corresponds to one of a number of "unique entities" and that contains multiple fields "such as first name, last name, company, and job title"—in other words, an entry in an electronic address book.  *Id.* at 2:1–3; *id.* at Fig. 6B.  And a "record object" is described in the specification as any data structure that serves as a repository for data relating to various "deals," "leads," "opportunities," "accounts," and "contact[s]" pertaining to a "system of record" such as a CRM.  *Id.* at 67:62–69:34, 131:32–41.

The patents further discuss that the claimed system "can extract information from the electronic activities that may be associated with deals or opportunities the sales representatives are working on [and] . . . use the information from these electronic activities to generate reports for managers of the organization."  '634 Patent at 8:31-35.  Here too, the patents stress that the primary benefit is automation: "These reports are generated based on data derived from electronic activity without requiring the sales

representative to perform any additional activities.  Furthermore, the managers also do not need to spend time generating these reports as the system can automatically generate these reports."  *Id.* at 8:35–40.  The Patents-in-Suit do not, however, specify the key piece of this contemplated functionality: *how* these scores are measured or calculated.  *See e.g., Id.* at Claim 10.  Nor do the Patents-in-Suit describe any new hardware or a unique arrangement of existing hardware.  '129 Patent at 194:40–43 ("Embodiments of the present disclosure can be realized in a variety of apparatus including electronic devices implemented using any combination of circuitry and software.").

The patents can be classified into two general categories.  The first category includes patents directed simply to sorting data (the "Sorting Patents").  The claims of the Sorting Patents boil down to the following concepts:

- <u>'129 Patent</u>: Parsing an electronic activity and using an unspecified matching policy to match the electronic activity with existing node profiles and record objects using the recipients or the sender of the electronic activity.

- <u>'106 Patent</u>: Parsing an electronic activity and using an unspecified matching policy to match the electronic activity with existing record objects using the recipients or the sender of the electronic activity.

- <u>'229 Patent</u>: Parsing an electronic activity to determine whether it should be matched to one or more record objects, and if so, using the identity of the sender and recipient to match the electronic activity with existing record objects.

- <u>'783 Patent</u>: Parsing an electronic activity to determine if it matches an existing record object. If it does not, creating a new record object of the appropriate type and associating it with the electronic activity.

- <u>'345 Patent</u>: Applying one of several types of text-based filter to two electronic activities with the same sender and recipient to determine whether each should be matched with a record object, and concluding that one should be and the other should not.

While the claims of the Sorting Patents may cover different methods of sorting, or different aspects of the process, they are all directed to the basic idea of accessing electronic messages and sorting them based on the information contained therein.  For instance, Claim 2 of the '129 Patent simply requires that

the message is sourced from two different databases, while Claim 6 requires only that the data is further sorted based on text contained in the message.  Whether taken together or individually, however, all claims of the Sorting Patents amount to the simple idea of receiving, parsing, and sorting data.

The second category includes patents directed to the generation of predictive "completion scores" (the "Score Patents").  Those patents, in turn, claim the following concepts:

- <u>'634 Patent</u>: Parsing an electronic activity to determine the role of the sender or recipient of the electronic activity and using that information, along with the timestamp of the electronic activity, to determine a completion score reflecting the likelihood of completing a deal.

- <u>'132 Patent</u>: Parsing an electronic activity to determine the role of the sender or recipient of the electronic activity, and using that information to determine current stage of the sales process and a completion score reflecting the likelihood that a deal will close within a given time.

The Score Patents are both directed to the basic idea of determining the present phase of a deal based on context clues contained in an electronic activity and using that information to predict a score reflecting the likelihood of completing a sale.  The patent claims no algorithm or other technical means for calculating these scores, and describes the process being carried out using generic computer hardware.

People.ai's infringement allegations as set forth in the Complaint confirm that the claims are addressed to generic data matching, data entry, and score generation steps without any specific technological or inventive hook.  People.ai's claim charts assert that Clari matches "electronic activities" such as "emails, phone calls, calendar or meeting events, etc." to "node profiles," which People.ai says are simply "contacts."  ECF No. 21-8 at 4, 9; *see also id.* at 3 (asserting that "node profiles" in Clari's system are "data structures" corresponding to "a plurality of unique entities (for example, people or companies)" that "include[] a plurality of fields" each having "one or more node field values (for example, fields for a name, an email address, a seniority, department or title, and a company at which the person works)").  People.ai then alleges that Clari matches the same electronic activity to a "record object" in the form of an "opportunity" entry in the customer's CRM by associating a recipient or sender of the electronic activity

with the "opportunity" record.[1]   ECF No. 21-8 at 9–10.   People.ai excerpts this figure from Clari's marketing materials to illustrate how Clari supposedly "accesses activities and matches the activities to an opportunity record object based on data extracted from electronic activities (such as emails) and object values of the record object (such as the contact name or opportunity name)":



*Id.* at 11.

People.ai's allegations with respect to the Score Patents are similar and likewise accuse Clari's Revenue Operations Platform.   The allegations point to a CRM score, which allegedly predicts which deals are tracking well and which are at risk.   ECF No. 21-8 at 85–99.   The infringement allegations demonstrate the functional nature of the claims because at no point do they address the manner in which this score is actually calculated (other than generalities like use of "AI").   The underlying mechanism of how those inputs are processed to come up with a score that is accurate or useful is irrelevant, in People.ai's view, to the question of infringement—beyond the alleged "use of activity scores and opportunity scores based on" the inputs listed in the claim.   *Id.* at 91.

---

[1] In responding to SetSail's motion to dismiss in the parallel lawsuit, People.ai made clear that it considers "node profile" and "record object" generic data structures.   People.ai wrote that "the patent specification . . . [is] clear that node profiles are data structures that correspond to different entities, such as people," and that record objects simply store "data relating to various deals and opportunities that the sales reps are working on."   Declaration of Eugene Novikov submitted herewith ("Novikov Decl.") Ex. A at 7, 16.   The Court may take judicial notice of People.ai's public filings in the parallel case.   *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (appropriate to take judicial notice of court filings and other matters of public record such as pleadings in related litigation).

## V.    LEGAL STANDARDS

### A.    The Rule 12(c) Standard

"'Judgement on the pleadings is properly granted when [, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Id.* (quoting *Brooks v. Dunlop Mfg. Inc.,* No. C 10-04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)). Nevertheless, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Thus, "a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez*, 683 F.3d at 1108. "Patent eligibility can be determined on the pleadings under Rule 12(c) when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine Tech. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

### B.    The *Alice* Two-Step Test

The Supreme Court's two-step test established in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, governs the § 101 inquiry. 573 U.S. 208, 217–218 (2014). At step one, courts must determine "whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. In so doing, the court must consider the claims' overall "focus" and "character as a whole." *Elec. Power Grp., LLC,* 830 F.3d at 1353 (citations and quotation marks omitted). If the claims are directed to an abstract idea, the court must then decide "whether [the claim] contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72–73 (2012)). The claims must do "more than simply stat[e] the abstract idea while adding the words 'apply it'" and must include "additional features." *Id.* (citations omitted).

## VI.    THE CLAIMS ARE PATENT-INELIGIBLE

### A.    *Alice* step one: The claims are directed to an abstract idea

Under *Alice* step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).   In the context of computer-based claims, *Alice* requires courts to consider whether the claims center on "a specific means or method that improves the relevant technology," or instead focus on a "result or effect that itself is the abstract idea and merely invoke generic processes and machinery."  *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).  The claims at issue here fall into the second category because they recite only the bare concept of receiving, parsing, and sorting data. Indeed, the steps of the claims can readily be carried out in the human mind—a sure sign that they are directed to an abstract idea.  *Mortgage Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 526 (Fed. Cir. 2021).

#### 1.    The Sorting Patents are directed to an abstract idea.

##### a.    The Sorting Patents recite only the abstract idea of receiving, parsing, and sorting data

The claims of the Sorting Patents are directed to nothing more than the abstract idea of receiving data, recognizing certain information within that data, and sorting the data based on that information.  In its Complaint, People.ai characterizes the claims of the Patents-in-Suit as relating to "methods and systems for improving the functionality of a customer relationship management ('CRM') software program or systems that maintain, update or analyze CRMs, by capturing, maintaining, and interpreting customer interaction data and other information."  ECF No. 21 ¶ 9.  Even accepting this characterization as true, the claims recite only high-level functions to be performed by conventional hardware using an undisclosed algorithm—functions that pertain automating to a basic business process that the specification admits has been used for years.

The Federal Circuit examined similar data processing claims in its decision in *Return Mail, Inc. v. United States Postal Serv.*, 868 F.3d 1350 (Fed. Cir. 2017), *rev'd and remanded on other grounds*, 139 S. Ct. 1853 (2019).  There, the claims were directed to a method for processing undelivered mail items that

involved, among other steps, (1) receiving mail items, (2) identifying items as undeliverable, (3) creating output data including a customer number, (4) determining whether the sender wants a corrected address for the intended recipient, and (5) if so, transferring information to the sender to enable them to update the mailing address. *Id.* at 1367.  The Court determined that the claims were directed to the abstract idea of "relaying mailing address data" and that the steps were analogous to "collecting data," "recognizing certain data within the collected data set," and "storing that recognized data in memory."  *Id.* at 1368 (citation omitted).

The Court reached a nearly identical conclusion in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* finding that "the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory."  776 F.3d 1343, 1347 (Fed. Cir. 2014).  As the Federal Circuit observed there, "[t]he concept of data collection, recognition, and storage is undisputedly well-known.  Indeed, humans have always performed these functions."  *Id.*

The same is true of the claims at issue here.  Just as the postal service has for centuries collected mail, reviewed the relevant information on the envelope, and sorted it for delivery, so too have businesses collected client communications, reviewed them for relevant information, and sorted them for filing based on that information.  Likewise, banks "have, for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records," just as organizations have long reviewed messages, recognized relevant data such as the sender or recipient, and used that information to update their records.  *Content Extraction,* 776 F.3d at 1347.

Despite this, the Complaint contends—without support—that the claims "are [] not generically directed to collecting, analyzing and manipulating data, but rather . . . recite concrete advancements in the technology pertaining to a specific method, apparatus and system."  ECF No. 21 ¶ 23.  It points to praise received by People.ai for "employing the industry's most sophisticated matching algorithms to ensure that information from sales and marketing activities end up with the right accounts and opportunities in the CRM" and "leveraging AI" to perform certain information parsing tasks.  *Id.* ¶ 24 (citation omitted).  And it argues that "the claimed inventions improve functionality of systems of record . . . by determining real time relationships between electronic activities and record objects and dynamically providing node profile

information and other information from electronic activities." *Id.* ¶ 33; *see also id.* ¶ 28 (alleging that the Patents-in-Suit solved problems in the art by enabling node profiles to be "determined dynamically by a 'node graph generation system'"); *id.* ¶ 30 (similar).

However, the claims of the Sorting Patents do not recite any "specific method apparatus [or] system," or any "concrete advancement" beyond the automation of an existing process. Nor are the claims directed to the "sophisticated matching algorithms" allegedly employed by People.ai's software, any use of artificial intelligence, or any functionality for performing tasks in "real time" or "dynamically" (beyond performing them electronically).[2] Thus, contrary to People.ai's conclusory assertion, neither the claims nor the specification are "directed to a patent-eligible improvement to computer functionality" nor do they "enable computers to operate more quickly or efficiently, [or] solve any technological problem." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020). Rather, the claims simply describe the desired result—matching electronic activities to record objects—without "sufficiently describ[ing] **how** to achieve these results in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337–38 (Fed. Cir. 2017) (emphasis added).

Indeed, the specification notes on numerous occasions that the claimed process has been performed manually and that the alleged invention is merely intended to automate it. *See, e.g.,* '129 Patent at 64:17–18 ("Typically, these systems of records are manually updated . . ."); '129 Patent at 162:23–26 ("In this way, the present solution can enable dynamic updates to node profiles and a node graph including such node profiles, rather than manual/self-reported updates."). The specification identifies three purported problems posed by the performing the claimed receipt and sorting of information and updating of relevant files manually: (1) "the information that is updated into the systems of records can be incorrect either due to human error or in some cases, malicious intent"; (2) "the information may not be updated in a timely manner"; and (3) "employees may not be motivated enough to even update the systems of records, resulting in systems of records that include outdated, incorrect, or incomplete information." '129 Patent at 64:19–26; *see also*, '129 Patent at 1:34–37 ("[D]ue to the large volume of heterogeneous electronic communications transmitted between devices and the challenges of manually entering data, inputting the

---

[2] Indeed, People.ai has denied even that the claims are directed to a "node graph generation system," arguing that the concept does not appear in the text of the claims. Novikov Decl. Ex. B at p. 18.

DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS / CASE NO. 3:21-CV-6314-WHA

information regarding each electronic communication into a system of record can be challenging, time consuming, and error prone.").

Each of these problems relates to basic business processes.   In fact, all of the problems identified in the patents—human error, procrastination, and lack of motivation—have plagued humanity for the whole of its existence.   And the only solution purportedly provided by the claims ("maintaining" records, "accessing" documents, "extracting" information from those documents, "matching" the information with the records, and "storing" the document) "pertain[s] to methods of organizing human activity."   *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).   The Federal Circuit has found that patents seeking to automate manual processes "to conserve human resources and minimize errors" are "quintessential 'do it on a computer' patent[s]" directed to abstract ideas.   *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).   The abstract nature of the claims is, in fact, highlighted by the industry praise cited in the Complaint, which states that People.ai's product "help[s] enterprises accelerate time to revenue by **automating manual processes** . . . ."   ECF No. 21 ¶ 24 (emphasis added) (citation omitted).

Nor does the fact that the claims are directed to tasks performed in the ***context*** of a particular type of computer system (here, a CRM and appurtenant software) make them any less directed to an abstract idea.   In *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1357 (Fed. Cir. 2020), the Federal Circuit confronted claims directed to "a computer-based system for developing simulation models on a physical computing device," comprising graphical processes able to create graphical object types (like "Poodle") specific instantiations of which can vary without changing the definition of the object type in the simulation.   It was of no importance that the claims pertained to alleged improvements in a specific type of computer system (object-oriented graphical simulations).   The claims failed because they merely sought to take an idea in widespread use (using graphics instead of programming to create simulations) and apply it to object-oriented simulations without offering any actual "inventive solution" to a problem with computer functionality.   *Id.* at 1360–61.   So too here, People.ai seeks to patent basic notions of information processing (filtering and sorting communications and analyzing associated data to match them to files and draw certain conclusions about the files) and apply them in a particular computerized context without any improvement to the ***way*** the computer processes the information.

### b. The Sorting Patents' claimed abstract ideas can readily be performed by the human mind

The Federal Circuit has repeatedly held that "a process that can be and has been performed by humans without the use of a computer . . . is an abstract idea." *Mortgage Application Techs., LLC,* 839 F. App'x at 526 (citing *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016)). Nor does "[t]he mere automation of the exchange and storage of information . . . render the claims any less abstract." *Id.* (citing *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1013 (Fed. Cir. 2018)); *see also, FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016).

In its Complaint, People.ai makes the conclusory assertion that "[t]he invention . . . cannot be performed by the human mind." ECF No. 21 ¶ 23. However, "in ruling on a 12[(c) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1372 (Fed. Cir. 2018) (Moore, K.A., concurring) (quoting *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017)). Stripping away the claims' computer-related jargon further reveals that they are directed to basic information-processing tasks that have been performed by humans since time immemorial. As People.ai has interpreted these claims, they can be understood by analogy to an administrative assistant receiving mail and using the sender information to associate the incoming mail with company contacts and associated company accounts:

| Claim 20 of the '129 Patent | Human Example |
| --- | --- |
| 20. A system comprising: | |
| one or more processors; | |
| a memory coupled to the one or more processors, the one or more processors configured to: | |
| maintain a plurality of node profiles corresponding to a plurality of unique entities, each node profile including a plurality of fields, each field of the plurality of fields including one or more node field values; | assistant maintains a list of company contacts including their names, addresses, and the accounts with which they are associated |
| access a plurality of electronic activities transmitted or received via electronic accounts associated with one or more data source providers, the one or more processors configured to update the plurality of node profiles using the plurality of electronic activities; | assistant accesses mail received at the company office |
| maintain a plurality of record objects of one or more systems | assistant maintains a cabinet of |

12

| Claim 20 of the '129 Patent | Human Example |
|---|---|
| of record, each record object of the plurality of record objects comprising one or more object fields having one or more object field values; | files corresponding to company accounts |
| extract data included in an electronic activity of the plurality of electronic activities; | assistant reads the return address name on the incoming mail |
| match the electronic activity to at least one node profile of the plurality of node profiles based on determining that the extracted data of the electronic activity and the one or more values of the fields of the at least one node profile satisfy a node profile matching policy; | assistant uses the name to match the incoming mail to a particular contact on the list of company contacts |
| match the electronic activity to at least one record object of the plurality of record objects based on the extracted data of the electronic activity and object values of the at least one record object, wherein to match the electronic activity, the one or more processors are configured to: | assistant matches the incoming mail to the correct company account |
| identify, responsive to applying at least one matching policy of a plurality of matching policies for identifying record objects based on one or more recipients of the electronic activity and a sender of the electronic activity, a set of record objects with which to match the electronic activity, each record object of the set identified based on the one or more recipients or the sender of the electronic activity; and | assistant identifies the company account identified with the name in the return address |
| select the at least one record object included in the set of record objects; and | assistant selects the correct account file |
| store, in a data structure, an association between the electronic activity and the at least one record object. | assistant places the letter in the account file |

The additional elements claimed in the other Sorting Patents are no different:[3]

| Claim 19 of the '229 Patent | Human Example |
|---|---|
| identify a first set of candidate record objects to which to match the electronic activity responsive to applying a second policy including a first set of rules for identifying one or more record objects of a first record object type based on an object field value of the record object that identifies the one or more recipients; | assistant identifies the set of files associated with the letter's intended recipient |
| identify a second set of candidate record objects to which to match the electronic activity responsive to applying the second policy including a second set of rules for identifying candidate record objects based on the sender of the electronic activity, wherein the second policy includes a third set of rules for identifying candidate record objects of a second object type; | assistant identifies the set of files associated with the letter's sender |
| select at least one candidate record object included in both the first set of candidate record objects and the second set of | assistant cross references the two sets of files to identify |

[3] The currently asserted claim of the '106 Patent—Claim 19—contains no meaningful elements beyond those found in Claim 20 of the '129 Patent.

| Claim 19 of the '229 Patent | Human Example |
|---|---|
| candidate record objects | those with the same sender and recipient as the current letter |

| Claim 12 of the '783 Patent | Human Example |
|---|---|
| identify a system of record corresponding to the data source provider associated with an electronic account via which the electronic activity was transmitted or received, the system of record including a plurality of candidate record objects with which to match the electronic activity | assistant identifies the set of files corresponding to the company associated with the letter's return address |
| determine for each candidate record object, responsive to comparing the activity filed-value pairs to the object-field values of the plurality of candidate record objects, that a match score indicating a likelihood of the electronic activity matching the candidate record object does not satisfy a threshold; | assistant concludes that the letter's return address is not a sufficient match to any existing file set [4] |
| determine a determined object type of a new record object to generate based on one or more participants of the electronic activity, each participant of the one or more participants is a sender of recipient of the electronic activity; | assistant determines how to categorize the new document in the set of files associated with the company |
| generate the new record object of the determined object type in the system of record | assistant files the letter in a new folder within the set of files associated with the company |

| Claim 11 of the '345 Patent | Human Example |
|---|---|
| select, based on the electronic account, one or more filtering policies associated with the data source provider to apply to the first electronic activity and the second electronic activity, the selected one or more filtering policies including at least one of i) a keyword policy configured to identify electronic activities including a predetermined keyword; ii) a regex pattern policy[5] configured to identify electronic activities including one or more character strings that match a predetermined regex pattern; or iii) a logic-based policy configured to identify electronic activities based on participants of the electronic activities satisfying a predetermined group of participants; | assistant determines certain keywords or text to look for when receiving incoming letters (e.g., "urgent" or "invoice") |
| determine, by applying the selected one or more filtering policies to the first electronic activity, to restrict the first electronic activity from being matched with one or more record | assistant determines that a letter contains the specific keywords |

---

[4] The claim makes reference to a "match score indicating a likelihood of the electronic activity matching the candidate record object," but provides no explanation how (or whether) this score is calculated or what role it plays beyond serving as a threshold.

[5] Regex or "regular expressions" refers to a syntax used for computerized word searches. The patent neither claims a particular syntax, nor describes any improvements to the established regular expressions syntax. Additionally, People.ai has not accused Clari of meeting this limitation via the use of regular expressions.

| Claim 11 of the '345 Patent | Human Example |
|---|---|
| objects of a system of record of the data source provider based on the first electronic activity satisfying at least one of the selected one or more filtering policies, the system of record of the data source provider including a plurality of record objects; | |
| restrict the first electronic activity from being matched with one or more record objects of the system of record; | assistant does not file the letter with those keywords |
| determine, by applying the selected one or more filtering policies to the second electronic activity, to match the second electronic activity with one or more record objects of the system of record of the data source provider based on the second electronic activity not satisfying any of the selected one or more filtering policies; | assistant determines that a second letter does not contain these keywords |
| match, responsive to determining to match the second electronic activity with the one or more record objects, the second electronic activity with the first record object of the one or more record objects responsive to a match policy | assistant determines which file the second letter should be placed it |

2.  **The Score Patents are directed to an abstract idea.**

a.  **The Score Patents recite only the abstract idea of parsing data to calculate a "completion score"**

The Score Patents likewise claim no concrete technological improvement, instead claiming the abstract concept of using certain attributes of "electronic activity" (its timing and/or the role or title of the individuals involved) to calculate a "completion score" predictive of the likelihood of closing a particular sale.  The specification describes the use of an "enrichment module" that can "parse the plurality of identified electronic activities," "identify one or more node profiles, which may be associated with respective participants of the plurality of identified electronic activities," and "determine one or more values (e.g., a title, a position, an opportunity role, etc.) for the participants."  '634 Patent at 179:28–40. It further describes a "completion score module" that can use the information from the enrichment module to "determine a completion score"—that is "a score or probability that the opportunity, deal, process or other event associated with the record object 2802 will close, reach a predetermined event, or otherwise come to a successful conclusion."  '634 Patent at 179:43–49.  Ultimately, the patents are directed to the idea of identifying the job title of the client contact and using that, along with the time of the communication, to determine the likelihood of successfully closing the sale.

1   The claims themselves use entirely functional terms ("accessing," "selecting," "identifying,"

2   "determining," etc.) and leave it to the person of ordinary skill in the art to figure out how to do the difficult

3   programming work required to actually weigh the parsed information and generate a completion score (i.e.,

4   *how* the salient record objects are selected, the electronic activities identified, and the completion score

5   determined).  The specification provides no structure for either of the disclosed "modules," and makes only

6   generic references to determining (in an undisclosed manner) whether a given activity is more similar to

7   previously successful deals or previously unsuccessful deals.  In actuality, these modules are largely treated

8   as "black boxes" defined entirely by their desired function.  *See Dropbox, Inc. v. Synchronoss Techs., Inc.*,

9   815 F. App'x. 529 (Fed. Cir. 2020) (finding "black box" claims insufficient to render functional limitations

10   non-abstract.); *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, 193 F. Supp. 3d 1069, 1087–88 (N.D. Cal.

11   2016) (same); *Fitbit Inc. v. AliphCom*, Case No. 16-cv-00118-BLF, 2017 WL 819235, at *16 (N.D. Cal.

12   Mar. 2, 2017) (same).  When, as here, "'the focus of the asserted claims' is 'on collecting information,

13   analyzing it, and displaying certain results of the collection and analysis,' the claims are directed to an

14   abstract idea."  *Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 F. App'x. 950, 954 (Fed. Cir. 2017).

### b.   The Score Patents' claimed abstract ideas can readily be performed by the human mind

17   The Score Patents, much like the Sorting Patents, describe nothing more than an intuitive process

18   traditionally performed mentally by salespeople.  Salespeople have long understood that the identity of the

19   client representative with whom they are communicating can be a strong indicator of both the likelihood

20   that a sale will close successfully and the sale's timing.  That is, a pitch made directly to a CEO is more

21   likely to result in a completed sale than a pitch to a lower-level manager that may need approval from

22   senior managers or executives.

23   Describing that natural process without specifying how it is to be performed is not a patent-eligible

24   idea.  "Because the instructions discuss only broad functions and are not directed to any technological

improvement for performing those functions," the Score Patents do not meet the requirements of *Alice* step one.[6]  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1346 (Fed. Cir. 2018).

Because each of the patented methods can be performed by humans using conventional pen and paper or other manual processes, they recite nothing more than the abstract idea of receiving documents, parsing information from those documents, and storing them in a record system.

**B.**     ***Alice* step two: The claims do not contain a transformative inventive concept**

Step two of *Alice* asks courts to determine whether the claims contain "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 221 (quotation marks omitted).  To save an abstract patent, the claims must do more than merely perform "well-understood, routine, [and] conventional activities previously known to the industry."  *Id.* at 225 (citations and quotation marks omitted).  Accordingly, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Id.* at 223.  Whether a claim element is inventive is a question of fact, but "[i]n a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018).

The Federal Circuit has long held that "the mere collection and organization of data . . . is insufficient to meet the transformation prong of the test" and the claims cannot be saved from invalidity by reference to generic computer hardware and software.  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370, (Fed. Cir. 2011); *Elec. Power Grp.* 830 F.3d at 1355 ("invocations of computers and networks that are not even arguably inventive are insufficient.") (citation and quotation marks omitted); *Two-Way Media Ltd.,* 874 F.3d at 1341 (Fed. Cir. 2017) (claims must recite something "other than conventional computer and network components operating according to their ordinary function.").  The claims of the Sorting Patents do not describe anything more than the abstract idea of receiving, parsing,

---

[6] Even if the patent did describe in detail the process for calculating this score, it would still be nothing more than an abstract idea carried out using conventional means.  *Proctor & Gamble Co. v. QuantifiCare Inc.*, 288 F. Supp. 3d 1002, 1018 (N.D. Cal. 2018) ("Because information itself is an intangible, amassing information produces an intangible, and applying mathematical algorithms to sort or analyze that information is essentially a mental process.  As a result, both acquiring and analyzing information are regularly treated as within the realm of abstract ideas.") (internal citations omitted).

and storing data implemented using generic computers and software in a conventional manner.  The claims of the Score Patents likewise describe only the abstract concept of using the job title of a contact and the timing of a communication to determine the likelihood that a particular sale will close within a given time period, without specifying how that determination is to be performed.

The only hardware or software elements either set of patents require are "one or more processors," "a memory," "electronic activities," and a number of data structures ("node profiles," "record objects," "systems of records," and a generic "data structure").  *See e.g.,* '129 Patent at Claim 20.  The specification explains that these are not inventive structures: "Embodiments of the present disclosure can be realized using any combination of dedicated components and/or programmable processors and/or other programmable devices." '129 Patent at 194:54–57.  The specification goes on to say that "those skilled in the art will appreciate that different combinations of hardware and/or software components may also be used and that particular operations described as being implemented in hardware might also be implemented in software or vice versa." '129 Patent at 194:66–195:4; *see also* '129 Patent at 1:46–52 ("systems of record" include "customer relationship management systems, enterprise resource planning systems, document management systems, applicant tracking systems, or other sources of data that may maintain electronic activities, activities or records"); '129 Patent at 22:24–25 ("electronic activities" include "emails, phone calls, [and] meetings, among others . . . .").

People.ai contends that the "inventive concept" disclosed by the Patents-in-Suit lies in the allowance of "real time," "continuous[]," and "efficien[t]" analysis of records, "dynamically providing connections" between electronic activities and record objects, "intelligently infer[ring] relationships within sets of data," and similar claims.  *E.g.*, ECF No. 21 ¶¶ 33, 64, 95, 125, 155, 185, 213.  However, despite being "technical sounding," the steps of the actual claimed method "merely describe the functions of the abstract idea itself" and are therefore "not enough under step two."  *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017).  Likewise, while the patent may "certainly purport to accelerate the process of analyzing [] data, the speed increase comes from the capabilities of a general-purpose computer, rather than the patented method itself."  *FairWarning IP*, 839 F.3d at 1095; *Return Mail*, 868 F.3d at 1355 (affirming invalidation of claims that purported to "overcome[] the historical problems with prior art manual handling" and "do[] so quickly, more accurately, and at substantially less

cost" by allowing mail to be processed "virtually entirely automatically through the exchange of data files between computers."); *Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 918 (Fed. Cir. 2015) (finding a patent invalid that "answers the question of how to provide faster, more accurate and reliable impairment testing by simply stating 'use an expert system.'").

As discussed above, while the Complaint gestures at industry praise for People.ai's "sophisticated matching algorithms," use of artificial intelligence, and the "real-time" and "dynamic" nature of its processes, none of this speaks to any inventive concept embodied in ***the claims***.  Recognition in the marketplace cannot serve as evidence of an inventive concept when the patent's claims are not directed to the basis for that recognition.  *Citrix Sys., Inc. v. Avi Networks, Inc.,* 363 F. Supp. 3d 511, 520 (D. Del. 2019) ("[I]t is not enough just to disclose the improvement in the specification; instead, the Court's task is to 'analyze the asserted claims and determine whether they *capture these improvements.*'") (citation omitted) (emphasis in original).  Regardless of whether People.ai actually "employ[s] the industry's most sophisticated matching algorithms," there can be no dispute that the Patents-in-Suit do not claim those algorithms.  Rather, the claims are directed to high-level, functional concepts.  The claims do not, for instance, describe a novel matching algorithm or detail how a deep learning network is trained; nor do they instruct how to implement a "real-time" or "dynamic" system.  Instead, the Sorting Patents merely claim either the application of "at least one matching policy" to match an electronic activity with a record object based on the identity of a recipient or sender of the electronic activity, *see e.g.*, '129 Patent at Claim 20, or the use of "one or more filtering policies" utilizing either generic keyword/regex pattern searching or an undefined "logic-based policy." *See e.g.,* '345 Patent at Claim 11.  The claims of the Score Patents provide no more granularity, stating simply that the "completion score" is "based on the timestamp of each of the plurality of electronic activities and at least one of the role, the title, or the department of the at least one participant," and that the "likelihood that the process of the first record object will be completed within a predetermined time" is based on similar inputs, but failing to provide any guidance as to how these inputs are to be used to generate the desired score.  '634 Patent at Claim 10; '132 Patent at Claim 12.

In sum, "[t]he claims in this case do not [] require a new source or type of information, or new techniques for analyzing it"; nor do they "require an arguably inventive set of components . . . that would generate new data" or "invoke any assertedly inventive programming." *Elec. Power Grp.*, 830 F.3d at

1355.  Whether "taken individually or in combination, the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept."  *Capital One*, 850 F.3d at 1342.  Thus, the claims fail step two of *Alice* and the Court should find the Patents-in-Suit invalid.

## VII.    CONCLUSION

The claims of the Patents-in-Suit are unpatentable under § 101 because they are directed to an abstract idea, do not provide any concrete technological improvement, and fail to describe any unique hardware arrangement other than generic processors and databases.  Because these claims amount to nothing more than taking a ubiquitous and abstract idea and instructing a practitioner to "do it on a computer," they are invalid under Alice and its progeny.  For this reason, the Court should enter judgment on the pleadings in favor of Clari, finding that the Patents-in-Suit are invalid.

Dated:  September 21, 2021                                                  DURIE TANGRI LLP


                                                By:                        */s/ Eugene Novikov*
                                                        DARALYN J. DURIE
                                                        EUGENE NOVIKOV
                                                        RAGHAV KRISHNAPRIYAN
                                                        ANDREW T. JONES

                                                Attorneys for Defendant CLARI, INC.

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on September 21, 2021 the within document was filed with the Clerk of the

3

Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

4

_/s/ Eugene Novikov_

5

EUGENE NOVIKOV

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS / CASE NO. 3:21-CV-6314-WHA