ALAN R. OUELLETTE, CA Bar No. 272745
  aouellette@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE: 415.434.4484
FACSIMILE: 415.434.4507

JEFFREY N. COSTAKOS (Pro Hac Vice)
  jcostakos@foley.com
MATTHEW W. PETERS (Pro Hac Vice)
  mpeters@foley.com
**FOLEY& LARDNER LLP**
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202
TELEPHONE: 414.271.2400
FACSIMILE: 414.297.4900

LUCAS I. SILVA (Pro Hac Vice)
  lsilva@foley.com
**FOLEY & LARDNER LLP**
111 HUNTINGTON AVENUE
BOSTON, MA 02199
TELEPHONE: 617.342.4000
FACSIMILE: 617.342.4001

Attorneys for Plaintiff People.ai, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE.AI, INC., <br><br>                         Plaintiff, <br><br>       vs. <br><br> CLARI, INC., <br><br>                         Defendant. | Case No. 3:21-cv-06314-WHA <br><br> **PEOPLE.AI, INC.'S RESPONSE TO CLARI, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.   SUMMARY OF ARGUMENT .............................................................................. 2

III.  LEGAL STANDARDS ........................................................................................... 9

      A.    GENERAL STANDARDS APPLICABLE TO FED. R. CIV. P. 12(C) ...................... 9

      B.    PATENT ELIGIBILITY UNDER 35 U.S.C. § 101 ......................................... 9

      C.    THE "ABSTRACT IDEA" EXCEPTION SHOULD BE CONSTRUED
            NARROWLY ........................................................................................... 10

      D.    DECIDING PATENT ELIGIBILITY UNDER FED. R. CIV. P. 12(C) ..................... 11

IV.   ARGUMENT ......................................................................................................... 12

      A.    THE '129 PATENT IS ELIGIBLE FOR PATENTING ......................................... 12

            1.    *Alice* Step 1 ..................................................................... 13

            2.    *Alice* Step 2 ..................................................................... 16

      B.    THE '106 PATENT IS ELIGIBLE FOR PATENTING ......................................... 18

      C.    THE '229 PATENT IS ELIGIBLE FOR PATENTING ......................................... 18

            1.    *Alice* Step 1 ..................................................................... 19

            2.    *Alice* Step 2 ..................................................................... 19

      D.    THE '783 PATENT IS ELIGIBLE FOR PATENTING. ........................................ 20

            1.    *Alice* Step 1 ..................................................................... 20

            2.    *Alice* Step 2 ..................................................................... 21

      E.    THE '345 PATENT IS ELIGIBLE FOR PATENTING. ........................................ 22

            1.    *Alice* Step 1 ..................................................................... 22

            2.    *Alice* Step 2 ..................................................................... 23

      F.    THE '634 AND '132 PATENTS ARE ELIGIBLE FOR PATENTING ..................... 23

            1.    *Alice* Step 1 ..................................................................... 24

            2.    Alice Step 2 ...................................................................... 25

V.    CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)..................................................................................... passim

*Amdocs (Israel) Ltd. v. Openet Telecom., Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016)............................................................................................ 8

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016).......................................................................................... 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................................. 9

*Berkheimer v. HP Inc.*,
    890 F.3d 1369 (Fed. Cir. 2018).......................................................................................... 11

*Berkheimer v. HP, Inc.*,
    881 F.3d 1360 ...................................................................................................... 18, 20, 22

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019)..................................................................................... 11, 20

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) .............................................................................................. 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, National Association*,
    776 F.3d 1343 (Fed. Cir. 2014)........................................................................................ 5, 6

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018).......................................................................................... 10

*Data Engine Tech. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018)............................................................................................ 10

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980)............................................................................................................ 10

*Diamond v. Diehr*,
    450 U.S. 175 (1981)............................................................................................................ 11

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016).............................................................................. 11, 13, 21

*In re TLI Comms. LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016)............................................................................................ 11

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) .............................................................................. 11

*Koninklijke KPN N.V., v. Gemalto M2M GMBH*,
   943 F.3d  (2019) ......................................................................................... 6, 7

*Koninklijke KPN*,
   942 F.3d. ................................................................................................ 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) .......................................................................... 10, 16

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ............................................................................. 9

*McRo, Inc. v. Bandai Namco Games America, Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ............................................................... passim

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011) ......................................................................... 12, 24, 25, 26

*Return Mail, Inc. v. United States Postal Serv.*,
   868 F.3d 1350 (Fed. Cir. 2017) ............................................................... 5, 6

*Smart System Innovations, LLC v. Chicago Transit Authority*,
   873 F.3d 1364 (Fed. Cir. 2017) ............................................................................. 11

*Soremekum v. Thrifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) .............................................................................. 10

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
   135 S.Ct. 831 (2015) ....................................................................................... 11

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017) .............................................................................. 10

**Statutes**

35 U.S.C. § 101 .................................................................................................. passim

35 U.S.C. § 282(a) ....................................................................................... 11, 15, 25

**Rules**

FED. R. CIV. P. 12(C)10 ...................................................................................... ii, 9, 11

FED. R. CIV. P. 12(C)12 ................................................................................................... ii

Rule 12(b)(6) ...................................................................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

The Court should deny Clari's motion and find that the claims of the Patents-in-Suit are patent eligible under 35 U.S.C. § 101. As demonstrated below, the claims of the Patents-in-Suit are directed to valuable technological improvements in systems that maintain, update and analyze customer relationship management ("CRM") systems such as Salesforce®. The claims recite specific approaches that utilize specific rules to implement the inventions. And, importantly, the claims directed to matching of record objects to electronic activities are not directed to storing associations *within the CRM itself.* Rather, the claims are directed to matching that is carried out by "one or more processors" that are not the processors of the "systems of record" (the CRMs). This leads to technological improvements that Clari does not address in its motion because Clari ignores this aspect of the claims. The claims are also not result-oriented and they are not broadly directed to organizing existing information into a new form.

The claims of each patent recite a specific means or method that solves various technological problems in an existing technological process.  As explained below (and in the Complaint), these include improving the accuracy of matching to the correct record objects by using specific rules that are based on object field values of record objects, increasing the speed of matching while reducing the amount of computational resources consumed (i.e., fewer API requests, reduced network traffic with the CRM), and allowing multiple updates to CRM systems without the need to run searches across multiple databases.

In addition, Clari's motion must be denied because it fails to address specific claims and their limitations. Instead, the motion over-generalizes the claims in a manner that deprives them of all meaning. The Federal Circuit has repeatedly warned against ignoring the claim limitations in conducting the Section 101 analysis. By characterizing the claims at such a high level of abstraction, Clari fails to address the technological means recited in each claim for accomplishing the invention.

Additionally, the record is limited and the parties do not agree on representative claims. Clari fails to address each limitation of the independent claims and its motion and Clari does not address dependent claims at all. Again, this high level treatment invites legal error and is contrary to Federal Circuit guidance. As discussed below, many of the dependent claims are detailed and further specify the rules outlined in the independent claims or otherwise add limitations that are meaningful to the Section 101 analysis. For these reasons, Clari's motion should be denied.

## II.    SUMMARY OF ARGUMENT

In its motion, Clari places the Patents-in-Suit into two buckets—the "sorting patents" and the "scoring patents." Dkt. 53 at 8-9. Taking this approach, Clari generally characterizes five of the seven patents as "determining whether an electronic activity should be matched" to a record object in a customer relationship management system. *See id.* This summary ignores the specific limitations of the claims. For example, claims 1 and 20 of the '129 patent recite that a set of record objects is identified by comparing extracted data from an electronic activity to object values of one or more record objects, wherein each record object is identified based on one or more recipients or the sender of the electronic activity. *See* Dkt. 21-1 at 199:38-56. The claims do not generically recite determining whether to match—they include limitations that define how the matching is carried out. It is carried out by comparing object field values of a record object to extracted data, and the object field values correspond to senders and recipients of the electronic activity. Claim 19 of the '129 patent depends from claim 1, and it is even more specific. It further defines the rules for matching to include identifying a first set of candidate record objects based on one or more recipients of an electronic activity and identifying a second set of candidate record objects based on a sender of an electronic activity and selecting at least one candidate record object included in both sets. *See* Dkt. 21-1 at 198:56-199:19. Therefore, the claim includes matching based on the object field values and it adds the selection of candidate record objects from a set determined based on sender and a set determined based on recipient. The claim is not generically directed to the result as Clari suggests.

The claims of the '229 patent are also much more specific than the summary provided by Clari in its motion. Claim 19 recites first using a filtering policy to determine that an electronic activity is to be matched to a record object of a system of record. Dkt. 21-3. Then, similar to claim 19 of the '129 patent, the claim recites identifying a first set of candidate record objects of a first record object type based on an object field value of the record object that identifies one or more recipients of the electronic activity and identifying a second set of candidate record objects based on the sender. Dkt. 21-3 at 199:6-18. The claim also recites selecting at least one candidate record object that is included in both the first set of candidate record objects and the second set of candidate record objects and storing an association between that record object and the electronic activity. Dkt. 21-3 at 145:19-25.

Dependent claims of the '229 patent, which Clari ignores, provide further specificity. For example,

claim 6 further describes applying a first matching rule to identify record objects of a first record object type and a second matching rule to identify record objects of a second record object type. Dkt. 21-3 at 145:35-45. Claim 7 depends from claim 6 and further describes assigning different priority levels to the matching rules. Dkt. 21-3 at 145:45-58. Claim 11 describes the object field value is a value of a first object field corresponding to an object owner or a second object field corresponding to a team that identifies a group of people linked with the record object. Dkt. 21-3 at 145:45-58. These claims recite specific techniques for solving a technical problem that are far from claiming a patent ineligible concept.

Clari's analysis of the '106 patent is similarly flawed. The matching, identifying, selecting, and storing steps of claims 1 and 19 of the '106 patent are similar to the matching, identifying, selecting, and storing steps discussed above with respect to claims 1 and 20 of the '129 patent.  And claim 14 of the '106 patent is similar to claim 19 of the '129 patent in that it further defines the rules for matching to include identifying a first set of candidate record objects based on one or more recipients of an electronic activity and identifying a second set of candidate record objects based on sender of an electronic activity and at least one candidate record object included in both sets. *See* Dkt. 21-2 at 197:46-67. As such, the claims are not generically directed to "determining whether an electronic activity should be matched." Rather, the claims recite a specific means for solving an existing technological problem.

The '783 patent—which Clari characterizes as "parsing an electronic activity to determine whether it matches an existing record object"—is also highly specific. Claim 12 recites that electronic activities are accessed and parsed in order to generate activity field value pairs. Dkt. 21-6 at 198:7-13. Those activity field value pairs are compared to object field value pairs of a plurality of record objects in order to determine whether a match score indicating a likelihood of the electronic activity matching candidate record objects satisfies a threshold. Dkt. 21-6 at 198:20-25. If the match score does not satisfy a threshold, the system determines a new record object to generate based on the participants of the electronic activity and generates a new record object. Dkt. 21-6 at 198:26-33. The claim does not remotely resemble Clari's broad brush characterizations.

Again, the dependent claims of the '783 patent are even more specific. Claim 13, for example, depends from claim 12 and recites selecting a first candidate record object and adding a reference to the newly created record object as an object field value to the candidate record object. Dkt. 21-6 at 198:37-

PEOPLE.AI, INC.'S RESPONSE TO CLARI, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER F.R.C.P. 12(C)
Case No. 3:21-cv-06314-WHA

-3-

44. Clari errs by failing to address limitations such as these. The claim elements specifically describe how the system determines whether to generate a new record object and they define how the record object is referenced in a candidate record object.

The claims of the '345 patent are directed to specific filtering methods for electronic activities. Therefore, Clari's effort to lump this patent in as a sorting patent is misplaced. Claim 11 recites selecting filtering policies for two different electronic activities that include: a keyword policy; a regex pattern policy; or a logic-based policy, and applying those policies to the two electronic activities. Dkt. 21-7 at 193:5-26. The claim then recites restricting the first electronic activity from being matched based on the determination that it satisfies at least one of the first filtering policies, and matching the second electronic activity to a record object based on the determination that it does not satisfy any of the selected one or more filtering policies. *Id.* at 193:27-45. And, again, the dependent claims provide further meaningful limitations. For example, claim 18 adds to claim 11 the concept of maintaining node profiles and applying filtering policies to the electronic activity based on extracted field-value pairs from the node profiles for participants of the electronic activity. *See id* at 194:35-52. This allows for different filtering policies based on a participant's role at a company; for example, a policy for senior management and another for staff. This claim is specific and Clari makes no effort to address these limitations in its motion.

Finally, there are two patents that Clari characterizes as the "score" patents in its motion. Like the "sorting" patents, however, Clari does not address the specific limitations of the claims. Claim 10 of the '634 patent recites identifying electronic activities such as emails that are associated with a record object, and then parsing the emails to determine one or more participants. *See* Dkt. 21-4 at 196:50-60. Once the participants are determined, the claim recites determining at least one of a role, title, or department of the participants and determining a completion score indicating a likelihood of completing an event associated with the record object that was identified earlier in the claim based on the timestamp of each electronic activity and the role, title or department of the participants. *See id.* at 196:60-197:3. The claim is not just generally directed to "determining the present phase of a deal based on context clues in an electronic activity" (Dkt. 53 at 5), but rather it includes specific limitations defining the inputs of the completion score. In addition, like the other patents addressed above, the '634 patent includes detailed dependent claims, such as claim 17 which includes determining a "stage value" and a "duration since an update to

the stage value" and considering a first timestamp and a second timestamp to determine the completion score. Dkt. 21-4 at 198:35-43. The other "score" patent—the '132 patent—also includes the limitation of determining a likelihood that a process of a first record object will be completed within a predetermined time period based on a first object-field value pair identifying the stage of the process, the role of the first participant, and the data of each electronic activity. Dkt. 21-5 at 197:35-42. The claims recite specific ways that the claimed "completion scores" are determined. Clari ignores these specific limitations.

Taking such a high level approach leads Clari to focus on Federal Circuit decisions that are unhelpful to analyzing the claims at issue here. For example, Clari argues that "[t]he Federal Circuit examined similar data processing claims in *Return Mail, Inc. v. United States Postal Serv.*, 868 F.3d 1350 (Fed. Cir. 2017)." Mot. at 8-9. There, however, the parties agreed on a representative claim (unlike in this case) and the claim was result-oriented and did not explain how the claimed functionality was carried out. The primary limitation at issue in that case was "determining the sender wants a corrected address provided for intended recipients based on the decoded data," and the claim further recited "if the sender wants a corrected address provided, electronically transferring to the sender information for the identified intended recipients that enable the sender to update the sender's mailing address files." *Id.* at 1367. The claim then recited "if the sender does not want a corrected address provided, posting return mail data records on a network that is accessible to the sender to enable the sender to access the records." *Id.*

The claim did not specify how it was determined that the sender wanted a corrected address provided; it did not specify how to "enable the sender to update the sender's mailing address files;" and it did not describe how to "enable the sender to access the records" other than posting return mail data on a network. The claim was merely directed to a result, not a way of achieving the result. The claims here specify how the matching of electronic activities to record objects and the filtering are carried out.

Clari also relies on *Content Extraction & Transmission LLC v. Wells Fargo Bank, National Association*, 776 F.3d 1343 (Fed. Cir. 2014) for the argument that all claims of the "sorting patents" are directed to an abstract idea. *See* Dkt. 53 at 9. The claim in that case did not remotely resemble the claims here. The claim had three limitations: (1) receive output representing a diversity of types of hard copy documents that had not been scanned; (2) recognize portions of said hard copy documents corresponding to a data field; and (3) store information in memory. *See id.* at 1345. As with *Return Mail*, the claim

included no rules or steps defining how the invention was carried out. The claims here are far more specific and they recite technological innovations, not merely the collecting and storing of information.

The claims in this case more closely resemble those considered by the Federal Circuit in recent cases such as *McRo, Inc. v. Bandai Namco Games America, Inc.,* 837 F.3d 1299 (Fed. Cir. 2016) and *Koninklijke KPN N.V., v. Gemalto M2M GMBH,* 943 F.3d 1143 (2019). In *McRro*, the claims were directed to automating a process that had previously been performed by humans—lip synchronization for animated characters. 837 F.3d at 1314-15 ("The computer here is employed to perform a distinct process to perform a task previously performed by humans."). However, while the process was previously carried out based on the animator's subjective intent, the claims applied rules based on the shape of the character's face and certain "transition parameters" to apply in automating the synchronization. *See id.* Like here, the defendants argued that the process merely automated human activity, but they provided no evidence that the rules-based approach in the claim was used. *Id.* at 1314.

The situation here is similar. Clari argues that an administrative assistant could match record objects to electronic activities or calculate completion scores, but there is no evidence that it would be done by comparing object field values to extracted data or based on timestamps and roles of participants or pre-determined time periods. Like *McRo*, "there has been no showing that any rules-based [matching or prediction] process must use rules with the specifically claimed characteristics." *See id.* at 1315.  In addition, like *McRo* the claims here use objective rules (matching of extracted data to object fields, for example) to improve upon a subjective process.

Similarly, in *Koninklijke*, the claims were directed to detecting data transmission errors. Like the prior art, the claimed invention used "check data" to check whether data was accurately transmitted over a communications channel, but the invention relied on varying the check data 'in time" to detect errors. 942 F.3d at 1147. The district court granted defendant's motion for judgment on the pleadings, finding the claims directed to "the abstract idea of reordering data and generating additional data." *Id.* at 1148.

The Federal Circuit reversed, finding that the claims were directed to an improvement in an existing technological process. *Id.* at1150. ("By requiring that the permutation applied to the original data be modified 'in time,' claim 2, which is incorporated into all appealed claims, recited a specific implementation of varying the way check data is generated that improves the ability of prior art error

detection systems to detect systematic errors."). And in response to the defendant's argument that the alleged improvement was not adequately captured in the claims, the Federal Circuit held that "[a] claim that is directed to improving the functionality of one tool [] that is part of an existing system [] does not necessarily need to recite how that tool is applied in the overall system [] in order to constitute a technological improvement that is patent-eligible," and emphasized that the "relevant inquiry is whether the claims in this patent focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke processes and machinery." *Id.* at 1151. (internal quotation marks and brackets omitted).

The claims at issue here include specific rules and parameters for how the inventions are carried out. They are similar to the inventions considered by the Federal Circuit in these cases, which found the claims eligible at *Alice* step one. In addition, the claims at issue here represent technological innovations that were not even arguably present in the *Content Extraction* or *Return Mail* cases, and therefore there are additional reasons to find the claims patent eligible, particularly on the current record.

For starters, the Complaint in this case explains various ways in which the patents improve underlying technology. For example, for the '129 patent, the Complaint explains that systems that update or analyze CRMs did not allow for the association between record objects and node profiles and they did not allow for real-time prediction of information associated with electronic activities based on information stored within the customer relationship management system." Dkt. 21 ¶31. The Complaint, therefore, explains that the invention improves efficiency by providing a device that can continuously and consistently provide insights regarding business operations through real-time updates. Dkt. 21 ¶33. For the '106 patent, the Complaint explains that the claimed inventions "improve computer efficiency and reduce resource consumption, for example by allowing multiple updates to a CRM dynamically without the need to run multiple individual searches across databases.[1]" Dkt. 21 ¶65. Similarly, for the '229 patent,

---

[1] The Federal Circuit has found this type of improvement to be relevant in other cases. For example, in *Amdocs (Israel) Ltd. v. Openet Telecom., Inc.*, 841 F.3d 1288 (Fed. Cir. 2016), the court found claims directed to systems for accounting and billing directed to patent eligible subject matter. The patented system arranged the components in a "distributed architecture" that spread the data processing across the network, which avoided bottlenecks. *Id.* at 1292. The Court found the claims patent eligible because the claimed arrangement allowed the system to "operate in an unconventional manner to achieve an improvement in computer functionality." *Id.* at 1300-01.

the Complaint explains that the inventions improve conventional systems by determining real-time relationships between electronic activities and record objects based on direct and indirect context, and they improve computer efficiency and reduce resource consumption by allowing multiple updates to a CRM system dynamically. Dkt. 21 ¶95. For the '634 and '132 patents, the Complaint explains that the claimed completion scores represent a technological improvement because they are determined dynamically and are based on constantly changing variables, and that prior systems did not allow for the prediction of revenue generating events based on real-time data stored within the CRM. Dkt. ¶¶ 120-23, 150, 153. These are just examples of numerous paragraphs of allegations in the Complaint outlining ways the claimed inventions improved existing systems. These allegations should be taken as true at the pleading stage. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126 (Fed. Cir. 2018).

In addition, should the Court wish to consider additional detail concerning the technological benefits of the inventions at this stage in the case, the declaration of named inventor Oleg Rogynskyy attached hereto provides information concerning various benefits outlined in the Complaint and the specification of the patent. In particular, storing associations and carrying out matching between electronic activities and record objects outside of the CRM allows for more efficient syncing to the CRM and solves a technological problem relating to API request limits imposed by CRMs, such as Salesforce.[2] As Mr. Rogynskyy explains, Salesforce limits the number of API requests a customer of Salesforce can make in a day. Ex. A ¶7. To match electronic activities to record objects using object values of record objects would conventionally require the system to make API calls each time the system attempts to carry out the match in the CRM. *Id.* ¶8-9. The limit on API requests would, therefore, limit the number of electronic activities that could be matched to the CRM per day if each match were made in the CRM. *Id.* The result would be that the CRM would not be up to date, and therefore any predictions or insights that are determined based on the data in the CRM would not be based on accurate information. *Id.*

In addition to overcoming system updating challenges, by storing the profile and carrying out the matching to the profile and the record objects outside the CRM, the system does not need to maintain a

---

[2] The information regarding API limits can also be found in Salesforce documentation at https://developer.salesforce.com/docs/atlas.en-us.232.0.salesforce_app_limits_cheatsheet.meta/salesforce_app_limits_cheatsheet/salesforce_app_limits_platform_api.htm.  (last visited October 21, 2021).

live connection with the CRM. *Id.* ¶¶10-11. This allows the system to match electronic activities to record objects at a time when the CRM is available, and it reduces traffic on the network. *Id.* at ¶¶10-13.

In summary, by characterizing the claims at a very high level of generality in its motion for judgment on the pleadings, Clari has failed to show that any claim is directed to an abstract idea at *Alice* Step 1. Clari has also ignored numerous dependent claims that should be independently analyzed in the context of a Section 101 challenge, particularly at this stage of the case. The claims are technological in nature in that they solve technical problems with existing systems by allowing for the storing of associations between electronic activities and record objects outside of the CRM. The inventions improve the functionality of systems that update and maintain CRMs, and they obviate the need for a continuous connection to the CRM and conserve resources that would be required in a conventional system.

For all of these reasons, Clari's motion for judgment on the pleadings should be denied.

## III.   LEGAL STANDARDS

### A.   General Standards Applicable to Fed. R. Civ. P. 12(c)

A motion for judgment on the pleadings can "raise the defense of failure to state a claim," and in that case courts employ the "same test as a motion under Rule 12(b)(6)." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *see Chavez v. United States,* 683 F.3d 1102, 1108 (9th Cir. 2012) (stating the tests are "substantially identical"). As such, it is enough for a Plaintiff to plead facts that make his right to relief more than speculative to defeat such a motion to dismiss on the pleadings. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Patent eligibility can be determined on the pleadings under Rule 12(c) when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine Tech. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party," in order to prevail. *Soremekum v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

### B.   Patent Eligibility Under 35 U.S.C. § 101

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." 35 U.S.C. § 101. In *Alice Corp. v. CLS Bank International*, the Supreme Court articulated a

two-step test for examining patent eligibility under Section 101. 134 S. Ct. 2347 (2014). "We must first determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 2355. Abstract ideas are a category of patent ineligible concepts, and the abstract idea category embodies "the longstanding rule that an idea of itself is not patentable." *Id.* at 2355 (citations omitted). The relevant inquiry at Alice Step 1 is "whether the claims in the[ ] patent[ ] focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO*, 837 F.3d at 1314; *See also Elec. Power*, 830 F.3d at 1356 ("[T]here is a critical difference between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general.").  If the claims are not directed to a patent-ineligible concept under Alice Step 1, "the claims satisfy § 101 and we need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1262 (Fed. Cir. 2017)).

If the claims are directed to a patent-ineligible concept, however, courts next consider Alice Step 2. In this step, courts consider "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). This step is "a search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original).

## C.   The "Abstract Idea" Exception Should Be Construed Narrowly

Congress envisioned under 35 U.S.C. 101 that patent eligibility extends to "anything under the sun that is made by man." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). Judicially-created exceptions to Congress's intent should be interpreted narrowly, and the Supreme Court in *Alice* cautioned that courts should "tread carefully in construing this exclusionary principle." *Alice*, 573 U.S. at 217. Nevertheless, the *Alice* test has proven extremely difficult to apply in a coherent manner. *See e.g.*, *Smart System Innovations, LLC v. Chicago Transit Authority*, 873 F.3d 1364, 1377 (Fed. Cir. 2017) (Judge Linn: the "problem" with the test "is that it is indeterminate"); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1348 (Fed. Cir. 2018) (Judge Plager: the test is an "incoherent body of doctrine" making it "near

impossible to know with certainty whether the invention is or is not patent eligible"); *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1374 (Fed. Cir. 2018) (Judges Lourie and Newman: "I believe the law needs clarification by higher authority, perhaps by Congress, to work its way out of what so many in the innovation field consider are § 101 problems.")

Predominant among the problems encountered by courts in applying the *Alice* framework is that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (a "court must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirement of the claims") (quotation omitted); *In re TLI Comms. LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016) (warning that "we must be careful to avoid oversimplifying the claims); *see also Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981) (cautioning that overgeneralizing claims, "if carried to its extreme, make[s] all inventions un-patentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious"). Claims are to be understood from the perspective of one of ordinary skill in the art, a factual issue, as pled in the complaint. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 841 (2015) ("The district judge, after deciding the factual dispute, will then interpret the patent claim in light of the facts as he has found them.").

### D.   Deciding Patent Eligibility Under Fed. R. Civ. P. 12(c)

The general presumption that patents are presumed valid includes a presumption of patent eligibility. 35 U.S.C. § 282(a); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019). Patent eligibility under § 101 is a question of law often involving underlying questions of fact. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). Accordingly, patent eligibility may be resolved on a pleadings motion *only when* there are no factual allegations that, if taken as true, prevent resolving the eligibility question as a matter of law. *Aatrix*, 882 F.3d at 1125. Factual allegations that preclude resolution of the patent eligibility question on the pleadings include whether the claims (properly interpreted) are directed to abstract ideas and whether "the claim elements or the claimed combination are well-understood, routine, [or] conventional." *Id.*; *see also Koninklijke KPN*, 942 F.3d. at 1152-53. For

1    example, the question of whether a claim element or combination of elements is well-understood, routine

2    and conventional to a skilled artisan in the relevant field is a question of fact, and, of course, any such fact

3    that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence. *See*

4    *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

5    **IV.    ARGUMENT**

6          As noted above, Clari places the Patents-in-Suit into two buckets—the "sorting patents" and the

7    "score patents." Clari argues that the sorting patents "recite only the abstract idea of receiving, parsing,

8    and sorting data." Mot. at 8:15-16. And, with respect to the score patents, Clari argues that each "recite[s]

9    only the abstract idea of parsing data to calculate a 'completion score'." Mot. At 15:13-14. Clari violates

10   Federal Circuit guidance by ignoring the specific limitations of the claims and by attempting to treat a

11   single alleged abstract idea as representative across multiple patents. *See, e.g., Koninklijke*, 942 F.3d at

12   1143 (rejecting overbroad characterization). The claims must each be analyzed at this stage, and their

13   limitations should not be ignored in analyzing the concept to which they are directed at *Alice* Step 1. In

14   addition, the claimed inventions substantially improved existing systems by storing associations outside

15   of the "systems of record" that are recited in the claims. For these reasons, the claims pass muster under

16   § 101 and Clari's motion should be denied.

17         In addition, two of the so called Sorting Patents ('129 and '229) and one of the so called Score

18   Patents ('634) are asserted in *People.ai. Inc. v. SetSail Tech. Inc.*, Case No. 3:20-cv-09148 (N.D. Cal.).

19   There SetSail identifies the abstract ideas for the '129, '229, and '634, respectively as: "collecting

20   information about contacts from communications with those contacts;" "sorting email in light of the

21   participants;" and "predicting the likelihood of closing a deal in light of who communicated about the deal

22   and when." *Id.* at Dkt. 90. Thus, while People.ai believes that both parties have approached the claims in

23   a manner that is far too general, it bears noting that Clari and SetSail cannot even agree on the alleged

24   abstract ideas to which the claims are directed.

25         **A.    THE '129 PATENT IS ELIGIBLE FOR PATENTING**

26         Clari alleges that the '129 patent is abstract in two different ways. Mot. 4:8-25. To start, and

27   without addressing any limitations of any claim, Clari argues that all of the sorting patents are directed to

28   the abstract idea of receiving, parsing, and sorting data. Mot. 8:14-28. Then, Clari ignores post-*Alice*

guidance from the Federal Circuit and attempts to analogize claim 20 of the '129 patent to an "administrative assistant receiving mail and using the sender information to associate the incoming mail with company contacts"—again without addressing all of the limitations of the claim. Mot. 12:1-13:17.

These attempts to establish that the claims of the '129 patent are abstract are flawed because they approach the claims at too high of a level of generality. *Enfish*, 822 F.3d at 1337 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.") As explained herein, the claim is detailed and its limitations should not be ignored at *Alice* Step 1. And, were the Court to consider step 2 of the *Alice* test, the claim represents a technical improvement that is substantially more than any abstract idea to which it may be directed.

## 1.   *Alice* Step 1

The relevant inquiry at Alice Step 1 is "whether the claims in the[ ] patent[ ] focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO*, 837 F.3d at 1314. Claim 20 of the '129 patent is focused on a specific improvement in CRM systems–the automatic use of rules (i.e. matching policies) of a particular type. As noted above, not only does this improve the matching. It improves the operation of the system overall.

Claim 20 of the '129 patent recites "maintain[ing] a plurality of record objects of one or more systems of record" and matching an "electronic activity to at least one record object of the plurality of record objects based on the extracted data of the electronic activity and object values of the at least one record object." Dkt 21-1 at 199:20-61. It further recites that matching is done by identifying, "responsive to applying at least one matching policy of a plurality of matching policies for identifying record objects based on one or more recipients of the electronic activity and a sender of the electronic activity, a set of record objects with which to match the electronic activity[.]" *Id.* Thus, the claim recites comparing extracted data from an electronic activity to object values of record objects of systems of record, and it can include a one-to-many matching of electronic activities to record objects based on applying one of a plurality of matching policies that are based on senders and recipients of electronic activities. Claim 20 then "store[s], in a data structure, an association between the electronic activity and the at least one record object" to which it was matched. By storing the association outside of the system of record, the invention

PEOPLE.AI, INC.'S RESPONSE TO CLARI, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER F.R.C.P. 12(C)
Case No. 3:21-cv-06314-WHA

-13-

allows for improved efficiency of operation, including by reducing the number of communications that must be made to the system of record. Dkt. 21 ¶33 (noting that the claimed inventions "provide a device which continuously and consistently provides insights regarding business operations and can make real-time updates to record objects"); *see also* Ex. A ¶¶10-12.

The claim is directed to patent-eligible subject matter because it is directed to the automatic use of rules of a particular type, and Clari has not provided evidence that the claimed process is the same process previously used. *See McRo*, 837 F.3d at 1314. (noting that defendant "provided no evidence that the process previously used by animators is the same as the process required by the claims" and the "computer here is employed to perform a distinct process to automate a task previously performed by humans").

The detailed nature of the claim is also reflected in the specification where it discusses the specific rules. For example, the abstract of the '129 patent explains,

> For an electronic activity that is eligible or qualifies to be matched with one or more record objects, the system can identify one or more set of rules or rule sets. Using the rule sets, the system can identify candidate record objects. The system can then rank the identified candidate record objects to select one or more record objects with which to associate the electronic activity. The system can then store an association between the electronic activity and the selected one or more record objects.

('129 patent at Abstract).

The specification also explains the improvement over manual methods of matching, stating that "due to the large volume of heterogeneous electronic communications transmitted between devices and the challenges of manually entering data, inputting the information regarding each electronic communication into a system of record can be challenging, time consuming, and error prone." ('129 patent at 1:18-37). The specification further explains that a single matching policy can apply multiple rules to an electronic activity to increase the accuracy of a match. For example, the specification explains "[a] given matching policy can include a plurality of matching strategies . . . record object identification module 315 can apply one or more of the plurality of matching strategies from the matching models 340, in a predetermined order specified or determined via the matching policy, to identify one or more candidate record objects." (71:44-44; *see also* 74:42-63 providing an example of applying a matching policy to match and email to a record object based on a matching policy).

1    Like *McRO*, the claim at issue here is not one where the "claimed computer automated process
2    and the prior method were carried out in the same way." 837 F.3d at 1314-15. Again, Clari has presented
3    no evidence regarding prior art systems or methods. And even if there were some prior system
4    corresponding to Clari's analogy, Clari has not shown that any such system operated as do the claims of
5    the '129 patent. For example, Clari has not shown the accessing of one or more systems of record, the
6    storing of associations outside of the system of record, or that administrative assistants used extracted data
7    from electronic activities and field values of record objects.

8    Further, the automation goes beyond merely "organizing [existing] information into a new form"
9    or carrying out a fundamental economic practice. *Id.* at 1315. Indeed, using the claimed matching and
10   selecting, the invention stores associations between electronic activities and record objects using specific
11   rules, not in any manner whatsoever. For example, if a system simply matched every email mentioning
12   "George Costanza" to every record object mentioning "George Costanza" then the step of selecting would
13   not include selecting one of a set of record objects to which to match an electronic activity. It would select
14   all record objects (or not select any at all). The rules are specific and they meaningfully limit the claims.

15   Finally, Clari's administrative assistant analogy in its motion should be rejected because it does
16   not fit with the actual limitations of the claim. For example, Clari argues that the "access a plurality of
17   electronic activities [] associated with one or more data source providers" step of the claim would be met
18   by an assistant accessing company mail. Mot. at 12. Then, Clari alleges that the "maintain a plurality of
19   record objects of one or more systems of record" limitation would be met by the assistant maintaining a
20   cabinet of files corresponding to the company accounts. *See id.* at 12-13.

21   The problem is that Clari is incorrectly attempting to equate "data source providers" in the claim
22   with the "systems of record." In the claim, the "data source providers" are associated with the electronic
23   accounts that transmit the electronic activities such as emails. Dkt 21-1 at 199:20-61. The "systems of
24   record" are the multiple CRMs of different companies. Each different CRM (each "system of record")
25   includes record objects, and the claim recites "maintain[ing] a plurality of record objects of **one or more**
26   systems of record." *Id.* This is clear from the specification of the '129 patent, which states that "[t]he
27   plurality of data sources can further include systems of record, such as customer relationship management
28   systems, enterprise resource planning systems, applicant tracking systems…" Dkt. 21-1 at 1:46-51.

1    Therefore, for the analogy to track the claims, an assistant would need to be able to maintain mail

2    for multiple companies (multiple "systems of record") and match different pieces of mail to different file

3    folders (different record objects) of those different companies' accounts based on object values. The

4    assistant would also need to somehow store associations separate from the matching. This is not something

5    that has been happening since "time immemorial," and Clari is only able to make the analogy by

6    oversimplifying the claim and ignoring its limitations.

###    2.    *Alice* Step 2

7    As noted above, at *Alice* step 2 courts consider "the elements of each claim both individually and

8    'as an ordered combination' to determine whether the additional elements 'transform the nature of the

9    claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v.

10   Prometheus Labs., Inc.*, 566 U.S. 66, 78-79, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012)). This second step

11   is "a search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to

12   ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept]

13   itself.'" *Id.* (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

14   A claim is less likely to be patent-ineligible when its elements "do not preempt the use of the

15   abstract idea." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir.

16   2016). As discussed above, claim 20 of the '129 patent does not preempt all automated matching of

17   electronic activities to record objects in CRM systems using rules—the claims are much more specific. In

18   addition, claim 20 separately requires the matching of node profiles to electronic activities and that the

19   node profiles are updated using electronic activities. However, even if the court determines at *Alice* Step

20   1 that the claim is abstract, there is nothing routine or conventional about it and, read as a whole, it recites

21   significantly more than the abstract idea of automated matching of electronic activities to record objects.

22   People.ai explains in its Complaint that the '129 patent embodies "specific improvements over the

23   prior art and prior existing methods, systems, apparatuses and articles of manufacture, and were not well

24   known, routine, or conventional[.]" Dkt. 21 at ¶22.  These improvements include increasing efficiency of

25   the system, reducing resource consumption, and eliminating the need to run multiple searches across

26   databases.  *Id.* at ¶¶ 20-22.  People.ai's factual allegations must be taken as true. *Aatrix*, 882 F.3d at 1125.

27   ///

In addition, the invention claimed in the '129 patent represents a technical improvement because it claims the storing of associations between electronic activities and record objects separate from the system of record such as the CRM. The claim recites "one or more processors" that are configured to access electronic activities (such as emails) from electronic accounts "associated with one or more data source providers" and the same one or more processors maintain "record objects of one or more systems of record" (CRM systems) and maintain node profiles and store associations between the electronic activities and record objects. Dkt 21-1 at 199:20-61. Therefore, the "one or more processors" are separate from the processors of the CRM system and the associations between the record objects and the electronic activities are stored separate from the CRM system. *Id.* Making associations between electronic activities and record objects and storing them separate from the CRM avoids making numerous API requests or only performing the matching functionality when actively connected to the CRM.  Ex. A ¶¶ 10-11.

Syncing is a significant technical hurdle in the context of updating CRM systems. If many salespeople are inputting information into the organization's CRM system manually, each of those people would be accessing the CRM's servers and making changes that need to applied continuously in order to keep the system current. Ex. A ¶¶ 3, 9-10.  With the claimed system, such disparate updating can be virtually eliminated, because the system can be synced periodically and the associations between record objects and electronic activities can be imported into the CRM more efficiently. *Id.* ¶ 11. This not only reduces work on the part of the organization's employees—it reduces network traffic and saves processing resources that would be required for manual updating and constant syncing of the prior art.  Ex. A ¶ 10.

In addition to the detailed allegations in the Complaint, the declaration of inventor Oleg Rogynskyy provided herewith includes addition detail concerning the underlying technology related to the claimed inventions.  Thus, even if the Court finds that the claims of the '129 patent are abstract at *Alice* step one, fact issues exist that prevent resolving the subject matter inquiry at this stage. *See Berkheimer v. HP, Inc.,* 881 F.3d 1360, 1369 ("Whether something is well-understood, routine and conventional to a skilled artisan at the time of the patent is a factual determination. Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.").

The claims of the '129 patent are highly specific, they recite rules for carrying out the claimed matching of electronic activities to record object, and they improve the functionality of CRM systems. People.ai believes that the Court should find that the claims are not directed to an abstract idea at *Alice* step one. However, should the Court proceed to *Alice* step two, People.ai respectfully submits that the claims represent substantially more than an abstract idea, they are not merely conventional, and they improve the underlying functionality of CRM systems and systems that maintain CRM systems. For all of these reasons, People.ai respectfully requests that Clari's motion be denied.

### B.   THE '106 PATENT IS ELIGIBLE FOR PATENTING.

For purposes of this analysis, claim 19 of the '106 patent is substantially the same as the claim 20 of the '129 patent. For example, the matching, identifying, selecting, and storing steps of claim 19 are substantially the same as the matching, identifying, selecting, and storing steps discussed above with respect to claim 20 of the '129 patent the claim is eligible for patenting for the same reasons. Therefore, Clari has failed to show that this claim is directed to an abstract idea for the same reasons outlined above with respect to claim 20 of the '129 patent. As also explained above, Clari ignores the dependent claims of the '106 patent, which further specify the rules for matching.

In addition, claim 20 of the '106 patent includes the limitations of one or more processors configured to "access data of a plurality of record objects stored in one or more systems of record" and store "an association between the electronic activity and the at least one record object." Dkt. 21-2 198:47-199:19. Therefore, like the '129 patent, the invention includes the ability to access multiple systems of record and store associations between record objects from those multiple systems of record and electronic activities by the one or more processors. Clari does not separately address the '106 patent in its motion. *See* Dkt. 53 at 12-13. However, its administrative assistant analogy fails for the same reasons discussed above with respect to the '129 patent and its alleged abstract idea should be rejected for the same reason.

### C.   THE '229 PATENT IS ELIGIBLE FOR PATENTING.

Like the '129 patent, Clari characterizes the '229 patent as a sorting patent, and Clari's motion provides a materially identical argument for each sorting patent. Clari's brief differs for the sorting patents only in that it attempts to provide different analogies to activities of administrative assistants for each patent. However, those analogies are incomplete and ignore the specific limitations of the claims.

For example, for the '229 patent Clari directs its analogy to the differences between claim 19 of the '229 patent and claim 20 of '129 patent. (Mot. at 17:17-18:2). However, the limitations as described in the analogy do not track the differences between the claims. For example, Clari ignores the limitations "determine, responsive to applying a first policy including one or more filtering rules, that the electronic activity is to be matched to at least one record object of the identified system of record;" and "in response to determining that the electronic activity is to be matched to at least one record object of the identified system of record." And as with the '129 patent, Clari also does not even attempt to address the limitation "access a plurality of record objects of one or more systems of record."

### 1.    *Alice* Step 1

People.ai's analysis in Section III(A) above applies with equal force the system of claim 19 of '229 patent. In particular, the same one-to-many matching, selecting from a set of candidate record objects, and storing of associations are present in the '229 patent. In addition, claim 19 of the '229 patent is further removed from any alleged human activity or conventional system because it identifies candidate record objects based on a second policy that includes a set of rules for identifying candidate record objects based on recipients and a different set of rules based on senders. Moreover, the limitations "determine, responsive to applying a first policy including one or more filtering rules, that the electronic activity is to be matched to at least one record object of the identified system of record;" and "in response to determining that the electronic activity is to be matched to at least one record object of the identified system of record[]" have no analog in claim 20 of the '129 patent.  This further supports the conclusion that claim 19 is not directed to an abstract idea.

### 2.    *Alice* Step 2

Like the other claims discussed here, the limitations of claim 19 of the '229 patent amount to significantly more than any ineligible concept and the invention claimed in the '229 patent represents a technical improvement. Like the '129 patent, claim 19 recites storing of associations between electronic activities and record objects separate from the system of record such as the CRM. In particular, the claim recites "one or more processors" that are configured to access electronic activities (such as emails) from electronic accounts "associated with one or more data source providers" and they are also configured to access record objects "of one or more systems of record." Dkt. 21-3 at 144:40-145:25. The same one or

more processors also store associations between the electronic activities and record objects. *Id*. Therefore, the "one or more processors" are separate from the CRM system and the association between the record objects and the electronic activities is stored separate from the CRM system. *Id.* Accordingly, for the reasons outlined above with respect to the '129 patent and explained in the declaration of Oleg Rogynskyy provided herewith, the invention represents a technological improvement to the underlying functionality of prior systems. *See Cellspin*, 927 F.3d 1306 (holding that the invention satisfied *Alice* step two because the invention improved the efficiency of the transfer of data between two systems).

### D.       THE '783 PATENT IS ELIGIBLE FOR PATENTING.

Clari calls the '783 patent another sorting patent, and like the '129 and '229 patents, the only portion of Clari's brief directed specifically to the '783 patent is its analogy to the activities of an administrative assistant. However, Clari's attempt to analogize claim 12 of the '783 patent to the duties of an administrative assistant illustrates that Clari has overgeneralized the claim to the extreme. For example, Clari's analogy requires that an "assistant identifies the set of files corresponding to the company associated with the letter's return address" and then that the "assistant concludes that the letter's return address is not a sufficient match to any existing file set." This is not possible; the analogy appears to require the assistant to match a return address to a set of files and then also to determine that the return address does not match to any set of files. Moreover, in the next step of the analogy Clari replaces the limitations of claim 12 with the abstraction "determines how" in an effort to wedge the behavior of an administrative assistant into the steps of the claim. Mot. at 18:10-12.

The claim simply does not map to the behavior identified by Clari. Clari's analogy demonstrates why "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

### 1.       *Alice* Step 1

People.ai's analysis in Section III(A) above applies equally to the system of claim 12 of '783 patent. In claim 12, "electronic activities" are accessed and parsed and "a plurality of candidate record objects" are identified. Then, it is determined "for each candidate record object, responsive to comparing the activity field-value pairs to the object-field value pairs of the plurality of candidate record objects, that a match score indicating a likelihood of the electronic activity matching the candidate record object does

not satisfy a threshold[.]" Dkt. 21-6 at 197:50-198:35. These limitations are more specific than the matching recited in claim 20 of the '129 patent at least because they specifically require determining "a match score indicating a likelihood of the electronic activity matching the candidate record object," which takes into consideration a comparison of activity-filed value pairs and object-field value pairs. *Id.*

Claim 12 of the '783 patent also differs from claim 20 of the '129 patent in that it is additionally directed to the creation of new record objects based on the determination that an electronic activity does not match any record object. The claim then recites storing an association between the new record object and the electronic activity. *Id.* The claim is specific and it is directed to a technical improvement over prior systems. The limitations claim 12 of the '783 patent do not resemble Clari's broad characterization, and the analogy put forward by Clari does not correspond to the limitations. For these reasons, Clari has failed to show that the claim is directed to an abstract idea at *Alice* step 1 and its motion should be denied.

## 2.   *Alice* Step 2

As with claim 20 of the '129 patent, the '783 patent does not preempt all automated matching of electronic activities to record objects in CRM systems using rules—the claims are much more specific, and indeed even more specific than the claims of the '129 patent. However, even if the court determines at *Alice* Step 1 that the claim is abstract, there is nothing routine or conventional about it, and it recites significantly more than any alleged abstract idea.

People.ai explains in its Complaint that "[g]enerating a new record object, as compared to updating an existing record object, can involve an intensive use of computer resources and can lead to a more complex system of record that is more difficult to manage." Dkt. 21 ¶179 (quoting '783 patent specification). The Complaint goes on to discuss how the generation of new record objects is necessary in some cases and doing so "improves the overall status of the system of record, and in particular, the quality and health of the system of record." *See id.* ¶180.  The Complaint also explains that the invention, among other things, improves the quality of analytics that can be derived from the system. *Id.* ¶185.   In addition, because claim 12 of the '783 patent recites the storing of an association outside of the system of record, the same technological improvements related to increasing efficiency, reducing resource consumption, and eliminating the need to run multiple searches across databases apply to the claim. *See id.* at ¶¶ 20-22. People.ai's factual allegations in its complaint must be taken as true. *Aatrix*, 882 F.3d at 1125.

The invention represents a technical improvement because it claims the storing of associations between electronic activities and record objects separate from the system of record such as the CRM. Again, the claim recites "one or more processors" that are separate from the processors of the CRM system and the associations between the record objects and the electronic activities are stored separate from the CRM system. Dkt. 21-7 at 198:32-35. As explained above, making associations between electronic activities and record objects and storing them separate from the CRM avoids making numerous API requests or only performing the matching functionality when actively connected to the CRM. The technological improvements associated with the invention are, therefore, supported by the allegations in the Complaint and by the declaration of inventor Oleg Rogynskyy.  Thus, even if the Court finds that the claims of the '783 patent are abstract at *Alice* step one, fact issues preclude a finding of ineligibility at this stage. *See Berkheimer,* 881 F.3d at 1369.

### E.      THE '345 PATENT IS ELIGIBLE FOR PATENTING.

Clari's administrative assistant analogy for the '345 patent again ignores the specific limitations of the claims and the relationships between them. Mot. at 18:15-19:11. Claim 11 recites selecting filtering policies for two different electronic activities that include: a keyword policy; a regex pattern policy; or a logic-based policy, and applying those filtering policies to the two electronic activities. Dkt. 21-7 at 193:5-26. And, as noted above, dependent claim 18 adds the concept of maintaining node profiles and applying filtering policies to the electronic activity based on extracted field-value pairs from the node profiles for participants of the electronic activity. *See id* at 194:35-52. The claims are directed to a particular approach for applying different filtering policies, and Clari's analogy fails to address the specific limitations.

#### 1.      *Alice* Step 1

Claim 11 of the '345 patent is not directed to sorting, or even matching. Indeed, the invention helps to improve matching results, but the claim is directed to improved filtering methods in CRM systems using the specific filtering policies recited in the claim. As explained in the Complaint, the invention reduces computing resources consumed by the system because it limits the number of electronic activities to be considered when carrying out matching of electronic activities to record objects. Dkt. 21 ¶209.  The invention also reduces the amount of noise in the system of record by removing electronic activities that are not relevant to a particular business process. *See id.*  Therefore, the inventions improve the operation

of systems of record such as CRM systems, and they embody specific improvements to systems that maintain, update or analyze CRMs.  Dkt. 21 ¶210.  These allegations must be taken as true at this stage.

### 2.    *Alice* Step 2

Claim 12 of the '345 patent also represents an improvement to the underlying CRM system because the filtering and matching steps take place outside of the CRM and the instructions concerning the filtering and matching are then transmitted to the appropriate system of record. As with the claims outlined above, the steps of parsing, restricting, matching, etc., in claim 12 of the '345 patent are carried out by the same "one or more processors." Dkt. 21-7 at 192:57-59. In the final step of the claim, the one or more processors transmit instructions to store the association between an electronic activity and record object to the system of record. *Id.* at 51-54. By performing the steps locally and then transmitting the instructions to the system of record, the invention is able to avoid carrying out the filtering and matching steps within the CRM and it is able to avoid issues with syncing and connection that are outlined above with respect to the other claims. Ex. A ¶¶10-12.  Therefore, at a minimum, fact issues preclude a finding of ineligibility at this stage. *See Berkheimer v. HP, Inc.,* 881 F.3d 1360, 1369.

### F.    THE '634 AND '132 PATENTS ARE ELIGIBLE FOR PATENTING.

Clari calls the '634 and '132 patents "score patents" and alleges that the "score patents" are directed to an abstract idea. But, Clari is not consistent as to what the abstract idea even is. First Clari argues that "[t]he Score Patents recite only the abstract idea of parsing data to calculate a 'completion score'" Mot. at 19:13-14. Next Clari argues that "the patents are directed to the idea of identifying the job title of the client contact and using that, along with the time of the communication, to determine the likelihood of successfully closing the sale." Mot. at 19:24-27. And then, Clari argues that the score patents "recite nothing more than the abstract idea of receiving documents, parsing information from those documents, and storing them in a record system." Mot. at 21:4-5.[3]

Clari's analysis is also deficient because it does not address the limitations of the claims. Instead, Clari merely points to the verbs beginning the various clauses of the "score patents" and calls these "entirely functional." Mot. at 20:1-14. This scant analysis cannot meet Clari's burden to demonstrate

---

[3] Clari and SetSail disagree on the abstract idea. SetSail argues that the '634 patent is directed to "predicting the likelihood of closing a deal in light of who communicated about the deal and when."

1   invalidity by clear and convincing evidence. *See Microsoft*, 564 U.S. at 95.

2           **1.**    ***Alice* Step 1**

3           Claim 10 of '634 patent is directed to determining a completion score for "the likelihood of

4   completing an event associated with the first record object" based on electronic activities and considering

5   the timestamps of each of the electronic activities and "a role, a title, or a department corresponding to the

6   at least one participant" of each of the electronic activities. Dkt. 21-4 at 196:41-197:6. It further requires

7   determining "responsive to parsing data from the plurality of electronic activities, at least one participant

8   of each of the plurality of electronic activities." *Id*. The consideration of each of the timestamps and at

9   least the role, title or department of at least one participant for each of the electronic activities not only

10  automates determining likelihood of completion; it improves operation by dynamically considering all

11  data available in the system which results in better determinations by the system. *See e.g.*, Dkt. 21 ¶120.

12          Clari has not provided any evidence that a process claimed in the '634 has previously been used

13  by salespeople. Mot. at 20:17-22. Indeed, the objective determination of a "completion score" based on

14  parsed data from electronic activities, timestamps associated with the electronic activities, and the role,

15  title, or department of a person identified from those electronics activities is not human conduct. Moreover,

16  the '634 patent explains that "the present technical solution dynamically identifies electronic activities

17  associated with a selected record object. In response to identifying the electronic activities, the present

18  technical solution can continually determine or update the completion score for the record object using

19  the electronic activities." Dkt. 21-4 at 1:40-50. The specification further states that using the claimed

20  technical solution, a system "can make a more accurate prediction on completion of the opportunity using

21  the electronic activities that are timely, accurately, and automatically updated." Dkt. 21-4 at 177:35-55.

22          Claim 12 of the '132 patent is directed to determining "the likelihood that the process of the first

23  record object will be completed within a predetermined time period." Dkt. 21-5 at 197:10-64. This

24  determination is made based on a "field-value pair identifying the stage of the process;" a "role of the first

25  participant;" and "the data of each electronic activity of the plurality of electronic activities." *Id.* The claim

26  is similar to claim 10 of the '634 patent discussed above, but it is more specific and includes additional

27  inputs making it even more removed from activities that might be carried out by a human being.

28  Nevertheless, Clari simply glosses over these differences and treats the "score patents" together without

even citing any of the limitations of the claims of the '132 patent in its motion. *See* Dkt. 53 at 15-17. Having failed to even address the limitations of the claim, People.ai respectfully submits that it would be improper for the Court to find the claims ineligible on the current record.

Like *McRO*, the claims are not ones "where the claimed computer automated process and the prior method were carried out in the same way." 837 F.3d at 1314-15. Indeed, Clari has presented no evidence regarding prior art systems or methods, and People.ai does not bear the burden of demonstrating that the '129 patent is not invalid. 35 U.S.C. § 282(a).

## 2. Alice Step 2

For the '634 and '132 patents, the Complaint explains that companies spend significant resources to update and maintain their systems of record. Dkt. 21 ¶ 119, 149. Manually updating such systems causes the data to be out of date, and when enterprises use systems of record to make predictions or projections, such predictions will likewise be inaccurate if they are based on incomplete information. *Id.* The inventions of the '634 and '132 patents solve these problems by dynamically determining a completion score for a business opportunity based on timestamped information, the role, title or department of an individual identified in an electronic activity, or the stage of a record object. *Id.* at ¶ 120, 150.

In addition, the Complaint explains that a person of ordinary skill would understand that the claims of the '634 and '132 patents are not generically directed to collecting data or to human behavior, because the claims are directed to calculation of a completion score based on constantly changing variables that may be aggregated and compared for the purpose of predicting a likelihood of the completion of a certain event. *Id.* ¶ 122, 152. Finally, the Complaint explains that prior systems did not allow for the prediction of revenue generating events based on real-time data or the use of matched emails to generate completion scores, and that the claims represent concrete technological improvements because they "mak[e] it possible for the enterprise to obtain the benefit of the data within its systems of record without having to access servers on which the electronic activities matched to the record objects are stored." *Id.* at 123, 153. People.ai's factual allegations must be taken as true. *Aatrix*, 882 F.3d at 1125.

## V. CONCLUSION

People.ai respectfully requests that Clari's motion for judgment on the pleadings be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: October 21, 2021

**FOLEY & LARDNER LLP**
Alan R. Ouellette
Jeffrey N. Costakos (Pro Hac Vice)
Matthew W. Peters (Pro Hac Vice)
Lucas I. Silva (Pro Hac Vice)
Thomas A. James (Pro Hac Vice)


/s/ Lucas I. Silva
Lucas I. Silva

Attorneys for Plaintiff
People.ai, Inc.

PROOF OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to this action; my current business address is 111 Huntington Avenue, Boston, Massachusetts 02199.

On April 9, 2021, I served the foregoing document(s) described as:  **PEOPLE.AI, INC.'S RESPONSE TO CLARI, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**  on counsel of record for Clari in this action:

__X__      BY E-MAIL
      __X__      I served the foregoing document via e-mail to the addressees above at the e-mail
                addresses listed therein.

__X__      I declare under penalty of perjury under the laws of the State of California that
                the above is true and correct.
____      I declare that I am employed in the office of a member of the bar of this court at
                whose direction the service was made.

                              Laura Shine
                              Click and Type Name